## Hospital College of Medicine v. Davidson.

(Decided November 25, 1910.)

Appeal from Jefferson Circuit Court
(Chancery Branch, First Division).

1. Contracts—Duration—Silence As to Time—Intention of Parties—Gathered by Circumstances.—The rule is well settled in this State that where a contract is silent as to time the intention of the parties, so far as its duration is concerned, may be gathered from the circumstances attending its execution.

2. Same—Finding of Chancellor.—The chancellor properly held in this case that under the contract sued on by appellee it was agreed by the faculty that appellee, H. A. Davidson, should be made the permanent Professor of Physiology and the Diseases of Women of said college subject to removal for cause.

WILLIAM MARSHALL BULLITT and CARROLL & MIDDLETON, for Appellant.

HELM BRUCE, for Appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Appellant, Hospital College of Medicine, is a corporation renting certain real estate in Louisville, Kentucky. Its affairs were controlled by a number of physicians who were members of its faculty. Dr. P. R. Taylor was the dean of the faculty. Having made up his mind to take a trip abroad and retire from the faculty, he claimed that, inasmuch as two of the professors had paid $3,000.00 each for their seats, he was entitled to be paid that much for his seat. The payment of this sum was at first resisted by his fellow-professors, but rather than have a law-suit, it was finally agreed that, if he could find some other physician acceptable to them, who would pay the $3,000.00, they would elect him to the faculty and would give Dr. Taylor $2,000 of the sum so paid. Dr. Taylor suggested the name of appellee, Dr. H. A.

Davidson, who proved acceptable to the other members of the faculty. Thereupon Dr. Davidson entered into the following contract with appellant, Hospital College of Medicine:

"In consideration of a seat in the faculty of the Hospital College of Medicine, with full interest in all the property thereof, and a professorship in Physiology and the Diseases of Women in the Louisville and Hospital Medical College, I have today entered into the following contract:

"I agree to execute three negotiable notes of $333.33, each due in one, two and three years, and also two notes of $1,000.00 each, the first due Nov. 9, 1911, interest 6 per cent from date. Louisville, Ky., Nov. 9, 1907.

"H. A. DAVIDSON,

"HOSPITAL COLLEGE OF MEDICINE,

"H. H. GRANT, Treas."

Pursuant to the above contract, Dr. Davidson executed three notes for $333.33 each, and also two notes for $1,000.00 each. After the execution and delivery of these notes, appellant assigned the first four, aggregating $2,000.00, to Dr. Taylor, and retained the fifth note, $1,000.00, maturing November 9th, 1912.

After the execution of this contract and delivery of the notes, appellant, Hospital College of Medicine, and the Louisville Medical College combined their teaching staff into what was known as the Louisville and Hospital Medical College. Dr. Davidson was elected professor of Physiology and the Diseases of Women in the Louisville and Hospital Medical College, and occupied this position for one scholastic year. At the end of that time all the medical colleges in Louisville combined their teaching forces into one, under the name of the University of Louisville; their properties, however, were not sold, but were held as they had been before. When this merger was consummated, those in charge of the new institution refused to give Dr. Davidson the professorship of the Diseases of Women, but made him professor of Physiology. The former professorship was much more valuable than that of Professor of Physiology because of the fees that would accrue to the holder from consultations. Indeed, the evidence shows that the main purpose on the part of appellee in purchasing a seat in the faculty was to obtain the professorship of the Diseases of Women.

Upon the failure of the University of Louisville to continue Dr. Davidson as professor of the Diseases of Women he brought this action to recover of appellant the notes which he had already paid and to require appellant to protect him against those notes which it had assigned. He did not, however, ask a recovery of the first note of $333.33. because he had taught one year in the Louisville and Hospital Medical College, which was sufficient consideration for the note. Appellee based his action upon a failure of consideration. By appropriate pleadings appellant defended on the following grounds: 1. The contract specified no particular length of time that Dr. Davidson was to be allowed to hold the professorship referred to, and it was, therefore, terminable at will. 2. Appellee was a member of the faculty of the Louisville and Hospital Medical College. He took part in the proceedings leading up to the merger of the five medical schools. He consented to the merger and thereby put it out of the power of appellant to comply with the terms of its contract. By reason of these facts he was estopped from claiming a failure of consideration. 3. A subsequent and substituted contract between the parties, by which appellee agreed to release his right to the professorship of Physiology and the Diseases of Women in the Louisville and Hospital Medical College, and to accept in lieu thereof a chair in and under the control of the University of Louisville. Proof was heard and the case submitted to the chancellor, who entered a judgment in favor of appellee. From that judgment this appeal is prosecuted.

According to the testimony of appellee, he made no contract with appellant by which he was to release his professorship of Physiology and the Diseases of Women in the Louisville and Hospital Medical College, and accept in lieu thereof a chair in the University of Louisville. Some time after he began teaching in the Louisville and Hospital Medical College, the faculties of the various medical schools in Louisville set on foot certain proceedings looking towards a merger of these institutions into one institution, to be known as the University of Louisville. To this end a medical commission was appointed, consisting of two representatives from each school. As the Louisville and Hospital Medical College embraced two schools, it had four representatives on this commission. Appellee was present at the meeting when these latter representatives were appointed. Ac-

cording to his statement they were instructed to enter the merger only on condition that the teaching force of the Louisville and Hospital Medical College should hold the same chairs in the new institution as they held in the old. He voted for, and consented to the merger with this understanding, but he knew that when the merger took place the control of the new institution would pass into other hands.

The evidence for appellant is to the effect that, at the meeting when the merger was agreed upon, no guaranty or assurance was given that the members of the faculty of the Louisville and Hospital Medical College would be retained in their same positions. The four representatives of these two schools were simply instructed to vote solidly in favor of the retention of the members of the faculty. These facts were brought out in the depositions of a majority of the other physicians who took part in the various meetings.

We conclude that the chancellor properly held that the contract sued upon was not terminable at will. The rule is well settled in this State that, where the contract is silent as to time, the intention of the parties, so far as its duration is concerned, may be gathered from the circumstances attending its execution. When we consider the amount of compensation paid for the seat in the faculty, and the fact that the notes were to extend over a period of five years, we conclude that it was the intention of the parties that appellee was to be the permanent professor of physiology and the Diseases of Women, subject to removal for cause. The idea that he paid so substantial a consideration for the right to retain the professorship for a week or a month is preposterous. (Smith v. Theobald, 86 Ky. 141.)

We come, next, to a consideration of the case from the standpoint of the facts developed in the record. Appellee took part in the movement leading to the merger. He participated in the meetings. He voted for the merger and consented to it. He knew at the time that he was helping to put it out of the power of appellant to continue him as professor of Physiology and the Diseases of Women in the Louisville and Hospital Medical College. That institution, as such, ceased to exist; it no longer had any teaching force. He knew that the control of the faculty of the new institution would pass into other hands. True, he believed, and may have had good reason for believing, that he would be retained in the

same position in the new faculty. He, however, received no guaranty or binding assurance to that effect. It is true, after the execution, of the contract sued on, and when the negotiations looking to the merger were being carried on, he entered into no formal contract with appellant by which he agreed to release the chair he then held and accept in lieu thereof a chance of securing a chair in the University of Louisville. We regard this fact, however, as immaterial. As a matter of fact, his entire conduct shows that he did agree to the new arrangement and thereby consented that the new arrangement should take the place of the old. This is not a case where a party has given his obligation to pay money on account of a consideration which was to continue into the future, and by mutual consent the consideration is destroyed and it is held that the obligation must fail pro tanto with the consideration; it is a case where a party voluntarily surrenders the consideration for an old contract in the hope of securing a more profitable consideration. That this new consideration was not as valuable as he supposed it was, is due to no fault on the part of appellant. Appellee knew that the new institution was to be larger and was to have a wider reputation than any of the smaller colleges which were merged into it. The dignity of a chair therein would be greater than that attached to any similar chair in one of the smaller institutions. Appellee gave up his professorship in a smaller college for the chance of a chair in the new institution. He believed that the advantages of the new position would be greater than those of the position he released. Appellant did its best to have him occupy the same chair in the new institution. It did not violate any obligation imposed upon it by the contract in question. The time for appellee to have spoken was before the merger took place. Then he might have demanded the relief sought in this action. He will not be permitted, after he has discovered that the new arrangement is not as desirable as he believed it would be, to place the burden of his disappointment upon appellant, which was in nowise responsible for his failure to get or be continued in the chair that was most acceptable to him. Appellee, himself, assumed the risk of not securing exactly what he desired. By his own conduct he helped to take it out of the power of appellant to fulfill his contract, and voluntarily submitted his claims to others over whom appellant had no control and who might or might not, in

their discretion, retain him in the same chair he occupied in the old institution. He took his chances along with the other members of the faculty. He occupies a position in nowise different from theirs. Doubtless others besides appellee were disappointed because their fullest hopes were not realized. For their failure to get what they desired, appellant cannot be held liable.

Judgment reversed and cause remanded, with directions to dismiss the petition.