# Putnam v. Producers' Live Stock Marketing Ass'n.

(Decided Nov. 9, 1934.)

HICKMAN & WITHERS for appellant.

LAWRENCE L. KOCH and HERMAN G. HANDMAKER for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

The plaintiff, now appellant, H. D. Putnam, alleged that on or about January 16, 1931, he and the defendant, now appellee, Producers' Live Stock Marketing Association, entered into an agreement by which he was employed as a live stock salesman for the term of one year beginning February 1, 1931, at a salary of $3,300 and his moving expenses from Cincinnati to Louisville; that he had continued his services under that contract until September 15, 1931, when the defendant notified him that they were no longer required and refused to permit him to perform his contract thereafter. He sued for a balance of $1,482.90 of the annual salary charged to be

due him. When a demurrer was sustained to his petition as amended and he declined to plead further, it was dismissed, and he has appealed.

The writing relied upon by the plaintiff to take the case out of that part of the statute of frauds barring an action upon an oral agreement which is not to be performed within a year from the making thereof is the following letter:

"Dear Mr. Putnam: This is to confirm our telephone conversation of yesterday, noon. The Board acted upon the recommendation that you be employed as sheep and calf salesman for the Producers' Live Stock Marketing Association of Louisville, Kentucky, at a salary of $3,300.00 a year, plus moving expenses from Cincinnati to Louisville. Of course, this means only the truck hire.

"This recommendation was accepted by a vote of the Board, and you will please consider yourself an employee, to begin work on February 1, 1931, at the above salary.

"Assuring you that it is a pleasure of mine, as Manager, to have you with us, I am,

"Yours very truly,
"[Signed]   C. E. Houk,
"C. E. Houk, Manager,
"Producers' Live Stock Marketing Ass'n."

It is contended by the appellant that this letter is sufficient to meet the requirements of the statute that "the promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, be in writing, and signed by the party to be charged therewith, or by his authorized agent." The trial court was of the opinion that, since the duration of the time of the contract or period of service was not stipulated, the writing is lacking in an essential element and does not meet the requirement of the statute that the memorandum of agreement contain substantially all material elements necessary to make a binding contract. At most, thought the court, the contract established or ratified by the letter was for employment for an indefinite time and was terminable at the will of either party. Unless a definite period of one year's employment can be spelled out of the writing, the conclusions are sound and supported by authorities. Smith v. Theobald, 86

Ky. 141, 5 S. W. 394, 395, 9 Ky. Law Rep. 449; Louisville & N. Railroad v. Offutt, 99 Ky. 427, 36 S. W. 181, 18 Ky. Law Rep. 303, 59 Am. St. Rep. 467; Yellow Poplar Lumber Company v. Rule, 106 Ky. 455, 50 S. W. 685, 20 Ky. Law Rep. 2006; Tracy v. Deshon, 157 Ky. 226, 162 S. W. 1116; Bowen v. Chenoa-Hignite Coal Company, 168 Ky. 588, 182 S. W. 635; Morris Shoe Company v. Coleman, 187 Ky. 837, 221 S. W. 242. The case is therefore resolved into ascertaining the intention of the parties through interpretation of the writing in the respect indicated.

The communication confirms a conversation between the parties without reciting any of it; advises the approval by the board of directors of the recommendation that Putnam be employed as a salesman "at a salary of $3,300 a year, plus moving expenses from Cincinnati to Louisville," and that he should consider himself employed to begin work "at the above salary." The controlling issue is whether these provisions are sufficient to show an intention to employ the plaintiff for the definite period of a year.

It may be said generally that a contract of employment is not incapable of enforcement on the ground of indefiniteness merely because the precise period that the service shall continue is not specified. The English doctrine as laid down by Blackstone is that:

> "If the hiring be general, without any particular time limited, the law construed it to be a hiring for a year, upon the principle of natural equity, that the servant shall serve and the master maintain him throughout all the revolutions of the respective seasons, as well when there is work to be done as when there is not." 1 Commentaries, 425.

This principle or presumption, at first adopted more or less in this country, has been generally repudiated by nearly all our courts, and it may be said that the American doctrine is that an indefinite or general hiring is prima facie a hiring at will which either party may at any time terminate. But it is everywhere recognized that there can be no inflexible rule in this respect. The duration of the employment must be treated always as an open question, to be determined by the circumstances of each particular case, or as one which is dependent upon the understanding and intent of the parties to be ascertained by inference

from their written or oral negotiations (as the case may be), the usages of business, the situation and object of the parties, the nature of the employment, and all the circumstances surrounding the transaction. Labatt, Master and Servant, secs. 156, 159; 18 R. C. L. 508; 39 C. J. 43 et seq., notes, 8 Ann. Cas. 280; Annotations, 11 A. L. R. 469, 480; Smith v. Theobald, supra; Morris Shoe Company v. Coleman, supra. Compare, Miller v. N. W. Ritter Lumber Company, 110 S. W. 869, 33 Ky. Law Rep. 698; Bridgeford & Company v. Meagher, 144 Ky. 479, 139 S. W. 750; Stewart Dry Goods Company v. Hutchison, 177 Ky. 577, 198 S. W. 17, L. R. A. 1918C, 704; Newark Shoe Stores Company v. Kemmis, 207 Ky. 226, 268 S. W. 1114; Hospital College of Medicine v. Davidson, 140 Ky. 776, 131 S. W. 1004; Mogg v. Farley, 205 Ky. 25, 265 S. W. 449; Atkins v. Atkins' Adm'r, 203 Ky. 291, 262 S. W. 268.

Controlled by that general concept or canon of construction, it seems to be rather uniformly held that the circumstances of agreeing on weekly, monthly, quarterly, or semiannual payments of wages is sufficient of itself to establish the presumption of a hiring for the period covered by each payment. But, when the agreement was for employment at a specified compensation per year, the decisions are not in accord as to the effect of such provision in relation to the duration of the contract. There is a line of cases holding that employment at a certain sum per month or year is so indefinite as to constitute only a contract terminable at will. The editor of the annotations in 11 A. L. R. 469, says that practically all of those cases have without argument followed a certain text-book which laid down that proposition without judicial authority to support it. Regardless of the origin of this divergence, as disclosed by those notes and otherwise, there is now quite respectable authority establishing that to be a proper rule of construction. On the other hand, there are cases to the effect that the stipulation of compensation at a certain annual sum will of itself warrant the conclusion that the employment was for a year. 1 Labatt, Master and Servant, sec. 165, p. 528; Moline Lumber Company v. Harrison, 128 Ark. 260, 194 S. W. 25, 26, 11 A. L. R. 466. The Arkansas court in that case accepted as the best view, and that which is sustained by the weight of authority, to be that, where the hiring is at so much a year, month, or week, in the absence of any other consideration impairing the

force of the circumstance, that provision is sufficient to sustain the finding that the hiring was for the corresponding periods, for, it is reasoned, ''where a unit of time is described in mentioning the compensation without any other reference to time, it is fairly inferable that the parties intended to contract for that period of time. Of course, the terms thus specified are to some extent indefinite, and may be controlled by the circumstances of any particular case, but in the absence of countervailing circumstances we think that a trial court or jury is warranted in construing the terms of the contract to be for a hiring for the unit of time specified in fixing the wages or salary.''

There is abundant authority for the conclusion. It is the view indicated, if not positively declared, by our opinions, that the specification in the contract of an annual salary creates the inference of annual employment. However, this is obviously a mere presumption of fact and not of law. As such, it may fade out in the light of attendant circumstances; or it may be sustained or fortified by those factors.

Our case of Smith v. Theobald, supra, has been widely cited. In it Milton H. Smith addressed a letter to Theobald confirming the understanding reached at an interview the previous night that Theobald would assume management of a hotel at Hot Springs and also become secretary and treasurer of the hotel company ''on or soon after the first of November next, in consideration of the salary of $125 per month, and rooms and board for yourself and family.'' In the suit for breach of that contract, the defense of insufficiency of the writing to evidence a contract not to be performed within a year was met by expressing the rule that, in the absence of definite agreement as to duration of service, it will be determined by the facts of each particular case. Referring to the presumption arising from certain illustrative employments, the opinion continues:

> ''As this rule is not inflexible, and may be controlled by circumstances, the circumstances of agreeing on weekly, monthly, quarterly, or half-yearly payment of wages may be sufficient of itself to create the presumption of a hiring for the corresponding periods. But the circumstances of the hiring, though no time is expressly agreed upon, may show that it was to continue for a year, al-

though the payment of wages was to occur monthly, etc. And we think that the facts set forth in the writing just quoted manifest a hiring by the year, and that the appellant intended to hire the appellee by the year, for it is shown by the letter that the appellee was in business in the city of Louisville as the manager of the Staniford Hotel;· that he was required to give up that business and move himself and family to Hot Springs, Arkansas, and there assume the management of the Avenue Hotel, and to act as secretary· and treasurer of the hotel company. Was the appellee to give up his position in the Staniford Hotel in Louisville, and move himself and family to Hot Springs, Arkansas, a distance of several hundred miles, at a large expense to himself, for the sake of a month's employment at the price of $125 in the Avenue Hotel? We think that neither the appellant nor the appellee contemplated a contract of this kind. We think that the writing shows that they did not; but it shows that they contracted for a year's service at the rate of $125 per month, or $1,500 for the year.''

The decision was influenced also by the reply made by Theobald to Mr. Smith's letter accepting the proposition to take over the management of the hotel ''for one year at $1,500 per annum and rooms and board for self and family.'' While this communication was not acknowledged, it was received, and Theobald entered upon the service. The letter was regarded as merely interpreting definitely the understanding of the parties to which Smith assented by silence and acquiescence.

In Morris Shoe Company v. Coleman, supra, suit was based upon a letter proposing to Coleman, who lived in Alabama, that, if he would move to Paducah, Ky., and become the company's salesman at its store and assistant manager, to act when the manager was absent, the company would guarantee him a salary of $1,800 based upon a certain per cent. of the net sales, and after that it would arrange for him to have an interest in the business. The letter suggested that after the second year he would be in position to make ''some real money.'' The offer was accepted, and Coleman worked until his discharge a few months later, during which time he was paid $150 a month. The point was made that the letter did not provide employment for any specific period and was terminable at will after reason-

able notice. The court, considering the circumstances of moving from a distant state and the subsequent act of paying the monthly proportion of the annual salary stipulated, in connection with the terms of the letter, held that there was an employment for a year, and affirmed a judgment for damages for breach of the contract

It is pointed out in Maynard v. Royal Worcester Corset Company, 200 Mass. 1, 85 N. E. 877, that the word "salary" is more frequently applied to annual employments than to any other, and that its use may import a factor of permanency. So, as we have stated, the mere stipulation that an employee shall be compensated at so much salary per year is of such major evidential value that it requires something to overcome it The nature of the position to be occupied or the service to be rendered cannot be ignored; e. g., the employment of a manager of a business at a substantial annual salary cannot be viewed as a hiring at will without doing violence to the common understanding of business men. Martin v. New York Life Insurance Company, 148 N. Y. 117, 42 N. E. 416. Close to this, it may be said that of potent significance are the objects which the parties had in view, whether the purpose of the one was to secure a permanent employee who would develop his business in that particular service, and the purpose of the other was to obtain permanent employment. Here the company wanted a salesman in a year-round, and not a seasonable, business. It is a matter of common knowledge that such work is of the class in which permanency or continuity of service is to be expected; nothing to the contrary effect appearing.

Many of the contracts of this class coming before the courts have in themselves carried a negation or an affirmation of the definite intent. Thus a provision for the payment of a bonus or of commissions, plus the salary at the end of the year, is consistent with, and implies, a yearly hiring, or, at least, a tenure of service until the end of the business year. So, too, of significance particularly applicable to the contract before us is the statement that Putnam was beng employed "at a salary of $3,300 a year," and not at that rate of compensation, which would have merely indicated a measure of compensation and not have carried the idea of a measure of tenure. Another important factor is that the company, as a consideration for the acceptance of

the offer, paid the moving expenses of Putnam and his family from Cincinnati. This is indicative of an employment more certain and definite than one possible of discharge at any moment without cause or notice. A similar provsion supplementing the less indicative statement that the salary would be at the rate of a certain sum per year for an accounting officer was regarded as a circumstance looking toward some degree of permanency in Willis v. Wyllys Corporation, 98 N. J. Law, 180, 119 A. 24.

The letter to Putnam confirmed some oral understanding, and is on its face an unconditional contract to pay him $3,300 a year and his moving expenses to Louisville. We think it manifest that a yearly engagement may be legitimately inferred from this letter and the circumstances disclosed sufficient to sustain the cause of action. Of course, there may be some sufficient defense, but that is not before us.

Probably because of the disclosures made by some amended petitions subsequently withdrawn after a series of orders sustaining demurrers to them and by certain letters which were refiled with the final amended petition with notice that they would be relied upon as evidence, the parties on the appeal have waived the failure of the petition to allege that the plaintiff, after reasonable diligence, secured no other employment, or that he had earned nothing, during the period for which the balance of the salary was claimed. See John C. Lewis Company v. Scott, 95 Ky. 484, 26 S. W. 192, 16 Ky. Law Rep. 49, 44 Am. St. Rep. 251; Bridgeford & Company v. Meagher, supra; Abrams v. Jackson County Board of Education, 230 Ky. 151, 18 S. W. (2d) 1000; Torson Construction Company v. Grant, 251 Ky. 800, 66 S. W. (2d) 79.

The judgment is reversed.