HUMANA, INC., Appellant,

v.

John FAIRCHILD, Appellee.

Court of Appeals of Kentucky.

Feb. 29, 1980.

Rehearing Denied April 25, 1980.

Discretionary Review Denied
Sept. 16, 1980.

Frank P. Doheny, Jr., Bradley R. Hume, Woodward, Hobson & Fulton, Louisville, Ky., for appellant.

Charles W. Brooks, Jr., Louisville, Ky., for appellee.

Before COOPER, GUDGEL and LESTER, JJ.

COOPER, Judge.

This is an appeal from a judgment for the appellee/employee against the appellant/employer in an action for breach of contract. The issues are whether the evidence warranted such a finding, and whether the trial court committed numerous errors prejudicial to the appellant.

In September of 1975, the appellee, John Fairchild, entered into an agreement with the appellant, Humana, Inc., whereby he was to act as director of personnel at St. Joseph's Infirmary, a hospital owned and operated by the appellant. Under the agreement, the appellee was to begin working for the appellant on October 6, 1975. The exact nature of the contract, whether it was a contract for a fixed term of one year or a contract terminable at will, is disputed by the parties. On January 6, 1976, the appellant asked the appellee to resign. Again, the evidence is disputed as to whether such resignation was voluntary or procured under duress. Such is the substantive basis for the appellee's action against the appellant.

Specifically, he alleged that his contract with the appellant was for a fixed 'term of one year, and the actions of the appellant clearly breached the contract. Furthermore, he alleged that his resignation was not voluntary, but procured under duress. This action was tried and judgment entered by the trial court pursuant to a jury verdict on November 21, 1978. The appellant was found to have breached the contract and damages were awarded to the appellee. It is from this judgment that the appellant appeals.

Firstly, the appellant argues that the evidence failed to show that a contract for a

fixed term was entered into. In effect, it argues that the contract was terminable at will by either side. The only written evidence pertaining to the contract's existence was a letter of September 25, 1975, to the appellee from an agent for the appellant setting forth various conditions and terms of the contract. The letter stated, in part, that the appellee's salary was to be $18,500 per annum. Notwithstanding the ruling of the Court of Appeals in *Putnam v. Producers' Live Stock Marketing Ass'n*, 256 Ky. 196, 75 S.W.2d 1075 (1934), the appellant argues that stating a salary in terms of a specific amount "per year" or "per annum" should not raise the presumption that a one year contract has been entered into. Effectively, it urges this Court to overrule *Putnam*. We reject this argument, finding it unnecessary to reach the question of whether *Putnam* is valid in the light of modern employment practice.

■ Here, there was no instruction on the part of the trial court that a salary stated in terms of an amount per year or per annum would raise a presumption that a one year contract existed. On the contrary, there was ample evidence presented that an oral agreement had been reached between the appellee and the appellant's agent that there was to be a definite one year contract with a specified amount. Part of this evidence was the fact that the appellee had rejected an offer at the last minute from another corporation to assume his position with the appellant. It seems highly unlikely that the appellee would have been induced to reject a previous offer had not the appellant's offer included at least a one year commitment. Such is the substance of the appellee's testimony. Consequently, there was sufficient evidence for the trier of fact, here the jury, to believe that the contract entered into was for the fixed term of one year.

Secondly, the appellant argues that the appellee's resignation was voluntary. It contends that the hospital administrator's threat made to the appellee to the effect that if he did not resign he would be fired was not duress as a matter of law. It relies on the ruling of the Court of Appeals in *Redmon v. McDaniel*, Ky., 540 S.W.2d 870 (1976). Specifically, it cites the language that in the area of contractual agreement "it is not duress to threaten to do what one has a legal right to do, nor is it duress to threaten to take any measure authorized by law and the circumstances of the case." *Id.* at 872.

■ Admittedly, a mere threat by an employer to fire an employee unless the employee resigns is not, on its face, duress. Here however, the appellee testified that more than a mere threat was involved: he testified the hospital's administrator informed him that if he did not resign, bad references would be given to any future employer. Appellant denies that such statements were made. Therefore, this was a question of fact for the jury. Assuming the truthfulness of the appellee's stated facts, the *Redmon* case is clearly distinguishable. There, Redmon wrote the resignation letter and submitted it to his employer. He sought to resign rather than be fired in light of his own admission of misconduct. The only threat was to fire Redmon if he did not resign. Here, the duress did not arise from the threat to fire the appellee, but rather arose from the threat to furnish bad references. The substance of the testimony indicated the appellee was anything but an incompetent or "bad" employee. On the contrary, there was substantial evidence that the appellee was perhaps too efficient and too competent for his superiors.

■ The appellant argues that if such threats were made, the appellee should have refused to resign and sought an adequate remedy at law. Ordinarily, a threat to breach a contract does not constitute duress unless there is no adequate remedy at law. *See* 25 Am.Jur.2d, *Duress and Undue Influence*, § 19. Here, there was substantial evidence that had the appellee refused to resign, he would have suffered irreparable harm. The evidence established that even with his resignation and the threat of bad references removed, the appellee had extreme difficulty in securing

another job. Whether duress was involved in the appellee's resignation was a question of fact to be determined by the jury. For although the *Redmon, supra,* decision establishes the principle that a mere threat to exercise a legal right is neither duress nor coercion, it also further establishes the principle that such a threat must be made in good faith. The *Redmon* court defined a threat made in good faith as one "made in the honest belief that valid grounds exist to justify the action threatened." *Redmon, supra,* at p. 872. Accordingly, the jury had the right to determine whether the alleged threats made by the hospital's administrator were made in good or bad faith.

The remaining issues raised by the appellant relate to numerous rulings by the trial court during the trial and at the submission of the case to the jury. Firstly, the appellant argues that it was prejudicial error for the trial court to allow the jury to rehear a part of the appellee's direct testimony concerning the oral statements and agreements entered into regarding the length and terms of his employment. Appellant's argument is twofold: it contends that if such direct testimony were replayed for the jury, then the court was obligated to play the cross-examination testimony as well.

■ Secondly, appellant argues that as KRS 29.304 was repealed by the legislature effective January 2, 1978, the trial court had no authority to replay any portion of the testimony for the jury. With respect to the second argument, it is axiomatic to state that absent a statute forbidding such action, it is within the discretion of the court to permit such rereading of testimony. Evidently, KRS 29.304 codified the existing common law rule giving the trial court such discretion. In re-enacting Chapter 29 as 29A, the legislature evidently neglected to re-enact 29.304. This was apparently in anticipation of the Supreme Court of Kentucky promulgating rules regarding the rereading of testimony. In any event, we feel the trial court had sufficient authority under the common law to allow such rereading, even in the absence of a specific statute. *See* 76 Am.Jur.2d, *Trial,* § 1042;

*also see Jarvis v. Commonwealth,* 245 Ky. 790, 54 S.W.2d 307 (1932). Appellant argues that the refusal of the trial court to allow the rereading of the cross-examination testimony unduly prejudiced it since such testimony revealed a conflict in the appellee's testimony. We reject such an argument. Taken as a whole and in context, we find no evidence of any conflict. More significantly, the jury did not request a rereading of the cross-examination. To require it to hear such testimony would be clearly prejudicial to the appellee's interest, as there would be an undue emphasis placed upon it by the trial court. Consequently, the trial court acted correctly.

■ The remaining issues raised by the appellant will be briefly touched on. Appellant argues that the trial court erred in refusing to allow testimony relating to the nature of employment contracts between itself and other employees. The unusual facts surrounding the appellee's employment, specifically the fact that he had rejected one job offer to accept employment with the appellant, makes his employment contract unique. The evidence presented establishes the fact that the appellee felt himself to be in a unique bargaining position vis-a-vis the appellant. Accordingly, he demanded a specific salary as well as a contract for a fixed term of one year. Therefore, we see no prejudice in the trial court's actions. Clearly, the appellee was in a unique situation. Evidence relating to other contracts would have been irrelevant and confusing.

■ Appellant further argues that it was prejudicial error for the trial court to refuse to require the appellee to answer interrogatories with respect to the name and place of his current employer. It contends that such information, if not admissible as evidence, would lead to the discovery of other admissible evidence under CR 26.-02(1). The trial court rejected this argument as does this Court. The appellee and the appellant stipulated that the question of damages would only relate to the time the appellant had left his employ with the appellant until he had secured another job.

There was no question of punitive damages or damages relating to the appellee's reputation. There was only a question of compensatory damages. Therefore, the trial court acted correctly in not requiring the appellee to answer such interrogatories as this would have been an invasion of his privacy. Where the appellee currently works is irrelevant. It has been a long–recognized principle, with regard to discovery proceedings, that such proceedings must be kept within reasonable bounds and restricted to questions having substantial and material relevancy. *Carpenter v. Wells*, Ky., 358 S.W.2d 524 (1962).

Finally, appellant argues that in its instructions to the jury, the trial court erred in failing to define "contract terminable at will" and "good cause." We reject both arguments on their face. A review of this portion of the trial court's instructions reveals no evidence of ambiguity or lack of intelligibility. On the contrary, such instructions were clear and intelligible. In any event, as is argued by the appellee, the trial court's function herein is only to set forth the essentials for the jury. It is the respective counsel's duty to see to it that the jury clearly understands what such instructions mean, or do not mean. *See Collins v. Galbraith*, Ky., 494 S.W.2d 527 (1973). Accordingly, we find that the trial court did not err in this area.

As a court of judicial review, this Court cannot substitute its judgment for that of a jury. The evidence was conflicting as to the facts, yet the jury chose to believe the appellee and return a judgment for him. We find no error in any of the issues raised by the appellant.

Accordingly, the judgment of the trial court is affirmed.

All concur.