9 F.3d 106
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Wolfgang R. BUCHHOLTZ, Plaintiff-Appellant,
v.
Robert J. DUGAN, individually and in his official capacity
as Director of the UK Office of Engineering Services; Ray
M. Bowen, individually and in his official capacity as Dean
of the UK College of Engineering; Tom Moore, individually
and in his official capacity as Budget Director of the UK
College of Engineering; John W. Carrico, individually and
in his official capacity as Auditor of UK; Bobbye
Carpenter, individually and in her official capacity as a UK
police officer; The University of Kentucky Board of
Trustees, Defendants-Appellees.
 No. 92-6173.
 United States Court of Appeals, Sixth Circuit.
 Oct. 26, 1993.
 
 Before: NELSON and SUHRHEINRICH, Circuit Judges; and EDMUNDS, District Judge.*
 PER CURIAM.
 
 
 1
 In this Sec. 1983 action plaintiff Wolfgang R. Buchholtz alleges that he was deprived of his Fourteenth Amendment right to due process after he was terminated as supervisor of the machine shop at the College of Engineering at the University of Kentucky ("UK"). He also asserts deprivations of a liberty interest in his good name, due to the publicity he received concerning his termination, and a right to equal protection in that defendants selectively enforced UK's procedures against him and not against all other similarly situated personnel. Finally, plaintiff claims that his Fourth Amendment right to be free of unreasonable search and seizure was violated by the state criminal prosecution which occurred in connection with the discharge. The district court held that the university and its officials sued in their official capacities were entitled to Eleventh Amendment immunity and that defendants sued in their individual capacities were entitled to qualified immunity. This appeal followed.
 
 I.
 Facts
 
 2
 Plaintiff was hired by UK in 1968 to be the supervisor of the College of Engineering Machine Shop. It is undisputed that he was hired as a regular, full-time, exempt, staff employee, hired for an indefinite period of time. See UK Staff Personnel Policy and Procedure Nos. 4.1, 4.1.2.1., and 4.1.3.1. While employed at UK, plaintiff operated a private consulting business out of the UK machine shop, using UK facilities and employees. Buchholtz maintains, however, that after he arrived at UK, he made an oral agreement with Robert M. Drake, Jr., the dean of UK's College of Engineering from 1966 to 1972, that he could do private consulting work outside of his UK work.
 
 
 3
 Plaintiff was terminated on November 21, 1988, after an internal audit conducted by defendant John W. Carrico, an auditor in the UK Office of Management and Organization, found that over a five-year period, UK machinists had worked a total of 1,394 hours on private projects that were never billed through UK, amounting to $23,745 in compensation. The report found that the "Machine Shop Manager" had committed a number of improprieties, and concluded that plaintiff had violated UK Staff Personal Policy and Procedure No. 18.0, relating to "Outside Employment," and Ky.Rev.St.Ann. Secs.Sec. 514.030, .070, and .110, regarding theft and misapplication of property.
 
 
 4
 On two occasions prior to his discharge (October 3 and November 18, 1988) plaintiff met with his supervisors, defendants Robert J. Dugan, Director of the UK Office of Engineering Services; Ray M. Bowen, Dean of the UK College of Engineering; and Tom Moore, Budget Director of the UK College of Engineering. On November 21, 1988, Bowen advised plaintiff by letter that his employment had been terminated for violating UK Staff Personnel and Policy Procedure Nos. 12.1.3(b), (c), and (e); involving violation of university or department rules, (b); falsification of university records, (c); dishonesty on the job, (e).
 
 
 5
 Subsequently, defendant Bobbye Carpenter of the UK Police Department filed two criminal complaints charging plaintiff with two counts of theft by failure to make the required disposition of property pursuant to Ky.Rev.St.Ann. Sec. 514.070. Plaintiff was arrested, jailed, indicted, and tried. At the close of the prosecution's case, the state court granted plaintiff's motion for a directed verdict and entered a judgment of acquittal.
 
 
 6
 Plaintiff then brought this action in state court under 42 U.S.C. Sec. 1983 and Kentucky law. Defendants removed the action to federal court, and filed an answer and a counterclaim seeking the $23,000 in consulting fees earned. The district court granted defendants' motion for summary judgment as to the federal claims, and remanded the state law claims. This timely appeal followed.
 
 II.
 Eleventh Amendment Immunity
 
 7
 Plaintiff challenges the district court's ruling that UK and defendants, acting in their official capacities, are entitled to Eleventh Amendment immunity. As the parties are well aware,[1] this precise issue was also raised in Hutsell v. Sayre, --- F.3d ---- (6th Cir. Sept. 29, 1993). Our resolution of the issue in that case dictates a similar result here. We therefore affirm the district court's rulings that plaintiff's claims against the UK Board of Trustees and the defendants in their official capacities are claims against the "state" and therefore barred by the Eleventh Amendment for the reasons set forth in Hutsell.[2]
 
 III.
 Qualified Immunity
 
 8
 This leaves plaintiff's claims against the individual defendants in their personal capacities, for which the Eleventh Amendment provides no immunity. Hafer v. Melo, 112 S.Ct. 358, 364 (1991); Ex parte Young, 209 U.S. 123 (1908). A state official is entitled to qualified immunity for allegedly unconstitutional actions taken under color of state law if the conduct did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The inquiry is twofold: (1) whether the plaintiff has stated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation. Siegert v. Gilley, 111 S.Ct. 1789, 1793 (1991). This question is a purely legal one. Poe v. Haydon, 853 F.2d 418, 424 (6th Cir.1988), cert. denied, 488 U.S. 1007 (1989).
 
 
 9
 In the present case there is no serious dispute that three of plaintiff's claims are legally sufficient, i.e., that they state a constitutional right which was clearly established on the date of plaintiff's discharge: (a) property interest, see, e.g., Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985) (due process principle requires some kind of hearing prior to the discharge of an employee who has a constitutionally-protected property interest in his employment), cert. denied, 488 U.S. 941 (1988); Board of Regents v. Roth, 408 U.S. 564 (1972) (although property interests are not created by the Constitution, it provides certain procedural safeguards to certain interests that stem from an independent source such as state law); (b) liberty interest, see, e.g., Paul v. Davis, 424 U.S. 693, 707-08 (1976) (constitutional protections are required only if attack on reputation occurs in conjunction with an alteration in legal status; narrowing Roth ); Roth, 408 U.S. 564 (a person's reputation and good name are among liberty interests protected by due process clause of the Fourteenth Amendment); Codd v. Velger, 429 U.S. 624, 627-28 (1977) (per curiam) (where tenured employee demonstrates that he has been stigmatized by the voluntary, public dissemination of false information during course of termination, name-clearing hearing is required); and Burkhart v. Randles, 764 F.2d 1196, 1201 (6th Cir.1985) (same); (c) freedom from unreasonable search and seizure, see, e.g., Beck v. Ohio, 379 U.S. 89, 90-91 (1964) (Fourth Amendment, applicable to states through Fourteenth Amendment, prohibit arrests without probable cause). Thus, with these claims the analysis boils down to whether plaintiff raises genuine issues of fact sufficient to withstand summary judgment. We review grants of summary judgment de novo. Brooks v. American Broadcasting Cos., Inc., 932 F.2d 495, 500 (6th Cir.1991). We may uphold the grant of summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir.1988).
 
 A.
 Property Interest
 
 10
 The Fourteenth Amendment Due Process Clause affords procedural protections to property interests created under state law. Loudermill, 470 U.S. at 538; Roth, 408 U.S. at 577; Mertik v. Blalock, 983 F.2d 1353, 1359-60 (6th Cir.1993); Sutton v. Cleveland Bd. of Educ., 958 F.2d 1339, 1348-49 (6th Cir.1992). It requires that any deprivation be preceded by notice and an opportunity to respond. Loudermill, 470 U.S. at 542; Guarino v. Brookfield Twp. Trustees, 980 F.2d 399, 408 (6th Cir.1992). The pre-termination hearing need not be an elaborate evidentiary hearing; but merely "an initial check against mistaken decisions--essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and supported by [sic] the proposed action." Guarino, 980 F.2d at 409 (quoting Loudermill, 470 U.S. at 545-46). More specifically, the employee need only receive "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Loudermill, 470 U.S. at 546. If post-deprivation remedies are available, an even less formal pre-termination hearing will suffice. Id. (citing Loudermill, 470 U.S. at 546-47).
 
 
 11
 We may assume for purposes of this appeal that plaintiff had a protected property interest in continued employment under Kentucky law,[3] because our real focus here is whether he received all the process he was due under Loudermill. We think that he did. Plaintiff received not one, but two pre-termination opportunities to explain his case and to clear his name. At the first meeting on October 3, 1988, Dugan told plaintiff that he, Dugan, had reviewed the daily records of the machine shop and discovered shop time marked down for private companies from the years of 1983 through 1986, but no work orders for them and no billings for them. Plaintiff was also told that, absent an explanation, an investigation would be conducted. Plaintiff responded that he had done some private consulting work on weekends but that he didn't think that it involved a substantial amount of time. The stated purpose of the second meeting, held on November 18, 1988, forty-five days after the first meeting, was to "explain the results of that audit and give [plaintiff] an opportunity to respond." Bowen read verbatim the five "improper activities" articulated in Carrico's report. Bowen asked plaintiff for a response, but plaintiff refused, stating that he needed time to respond to the accusations and that he wanted a written statement of the charges and access to his papers. Bowen informed plaintiff that he could obtain the written materials through the appropriate university channels; and that he could expect a response on his employment within one to five days. In short, plaintiff clearly received all the process he was due. Cf. Guarino, 980 F.2d at 409 (township trustees were not required to inform plaintiff with right of continued employment under Ohio law of the "precise nature" of the pre-termination hearing). Finally, although plaintiff did not avail himself of it, post-deprivation remedies were available to him, including a formal hearing before an impartial Grievance Hearing Committee, followed by review by the UK chancellor. See UK Rules 7.2.4 and 7.2.4.3.2.
 
 B.
 Liberty Interest
 
 12
 An injury to good name or reputation is not an actionable liberty deprivation unless it has occurred in a situation involving termination or the loss of a right or status previously enjoyed under state or federal law. Siegert, 111 S.Ct. at 1794; Paul, 424 U.S. at 709-10; Mertik, 983 F.2d at 1362-63. "Thus, when a 'nontenured employee shows he has been stigmatized by the voluntary, public dissemination of false information in the course of a decision to terminate his employment, the employer is required to afford him an opportunity to clear his name.' " Chilingirian v. Boris, 882 F.2d 200, 205 (6th Cir.1989) (citation omitted). A name-clearing hearing is not required unless an employer creates a false and defamatory impression about a particular employee in connection with his termination. Id. (citing Codd v. Velger, 429 U.S. 624 (1977)). The hearing need not comply with formal procedures to be valid; all that is required is an opportunity to clear one's name. Id. at 206.
 
 
 13
 Assuming as we did with the property interest claim, that plaintiff was deprived of a liberty interest, we likewise conclude that he received all the process he was constitutionally entitled to. As discussed above, plaintiff was given two opportunities to explain to the UK officials that their accusations were false and to clear his name. Summary judgment on this claim was proper.
 
 C.
 Equal Protection
 
 14
 Plaintiff argues that his equal protection rights under the Fourteenth Amendment were violated in that he is the only employee ever discharged and prosecuted criminally for engaging in private consulting activities and using UK facilities. "To state a claim under the Equal Protection Clause, a Sec. 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." Henry v. Metropolitan Sewer Dist., 922 F.2d 332, 341 (6th Cir.1990) (fact that plaintiff was singled out for investigation and discipline by government employer because of his union membership did not state equal protection claim); Charles v. Baesler, 910 F.2d 1349, 1356-57 (6th Cir.1990) (failure to promote fire captain did not violate his equal protection rights where plaintiff failed to show that government employer or his supervisors administered contractual promotion system with a discriminatory intent or purpose) (citation omitted); Huebschen v. Department of Health and Social Serv., 716 F.2d 1167 (7th Cir.1983) (male employee did not state equal protection claim against female supervisor where he alleged that supervisor had sexually harassed him and terminated his one-year probation to a supervisory promotion after their affair went sour).
 
 
 15
 Plaintiff claims that Falls v. Town of Dyer, Indiana, 875 F.2d 146 (7th Cir.1989) saves his claim. In Falls, the plaintiff alleged that he was the only person against whom the Town of Dyer had ever enforced its portable sign ordinance. The Seventh Circuit held if the plaintiff could prove that the law of Dyer was that "Phillip H. Falls may not use portable signs, and everyone else may," he had "stated a claim of irrational state action, of a bill of attainder by another name." Id. at 149. In reaching this conclusion, the Seventh Circuit observed that the town did not argue that it "had erred gravely in the administration of its laws, or that someone in local government had a vendetta against Falls but that the law is being enforced rationally against others," which would have failed in the face of the town's motion for summary judgment. Id. at 149. Rather, the town's argument "rest[ed] on the proposition that so long as Falls actually broke the law, no pattern of selectivity other than on account of race or a proscribed characteristic can be unconstitutional," which was "[n]ot so." Id.
 
 
 16
 Plaintiff's de facto bill of attainder claim is without merit. "The Bill of Attainder Clause is 'a general safeguard against legislative exercise of the judicial function, or more simply--trial by legislature.' " Song v. City of Elyria, Ohio, 985 F.2d 840, 844 (6th Cir.1993); Newell v. Brown, 981 F.2d 880, 887 (6th Cir.1992) (bill of attainder is legislative act which inflicts punishment on named individuals or members of an easily ascertainable group without a judicial trial), cert. denied, --- S.Ct. ----, 1993 WL 205362 (Oct. 4, 1993). Assuming arguendo that UK's employment policies and procedures are a "legislative act," there is no indication that defendants, in their individual capacities, have any rule-making authority. Unlike the defendant in Falls, defendants cannot by any stretch of the imagination be characterized as a governmental entity "fused with legislative and executive powers." Falls, 875 F.2d at 147-48 (citation omitted). Rather, the core of plaintiff's claim is Dugan's alleged vendetta against him, which is nothing more than a selective prosecution claim, which is not actionable under Sec. 1983 absent an allegation of an unconstitutional motive. Cf. Wayte v. United States, 470 U.S. 598 (1985) (selective prosecution claim does not violate due process unless defendant proves unconstitutional motive on part of prosecutor). Having failed to assert a constitutional right, our inquiry is at an end. See Siegert, 111 S.Ct. at 1793-94 (to mount successful challenge to qualified immunity claim, plaintiff must first establish that alleged infringement was of a constitutional right).
 
 D.
 Unreasonable Search and Seizure
 
 17
 Plaintiff argues that defendant Carpenter is not entitled to qualified immunity because a reasonably well-trained officer in her position would not have believed that there was probable cause to charge plaintiff with the crime of unlawful failure to make the required disposition of property under Kentucky law. A police officer is entitled to rely on a judicially secured warrant as a basis for qualified immunity from a Sec. 1983 action for illegal seizure, unless the warrant is so lacking in indicia of probable cause that no reasonably competent officer would have concluded that a warrant should issue. Malley v. Briggs, 475 U.S. 335, 341-45 (1986); Yancey v. Carroll County, Ky., 876 F.2d 1238, 1243 (6th Cir.1989). Probable cause means a reasonable belief that the suspect has committed an offense, and is to be viewed from the totality of the circumstances. United States v. Sangineto-Miranda, 859 F.2d 1501, 1508 (6th Cir.1988) (internal citations omitted).
 
 
 18
 Plaintiff claims that Carpenter did not have facts establishing probable cause before she swore out the criminal complaints against him. Plaintiff contends that Carpenter lacked the "essential fact" for the crime of failure to make the required disposition of property under Ky.Rev.St.Ann. Sec. 514.070[4]--namely that plaintiff had a "known legal obligation" to pay over his private consulting fees to UK.
 
 
 19
 Defendant's conduct comported with that of a reasonable officer's. As noted by the district court, Carpenter's affidavit stated facts about which there is no dispute; namely, that plaintiff "did receive payment for work performed by university employees on university time using university equipment and materials." Further, Carpenter conducted a three-week investigation, received a copy of Carrico's report, and consulted with the Fayette County Commonwealth attorney's office during the course of her investigation. That plaintiff was acquitted in the criminal litigation does not alter the analysis, because of the higher standard of proof between a criminal and civil action. See Louisville Civil Serv. Bd. v. Blair, 711 S.W.2d 181, 183 (Ky.1986) (reversal of criminal convictions does not automatically preclude subsequent administrative action because different standard of proof is involved).
 
 CONCLUSION
 
 20
 For all the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 *
 Honorable Nancy G. Edmunds, United States District Court Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Pursuant to motion, the two cases were assigned to the same panel
 
 
 [2]
 We also note that the state is not considered a "person" under Sec. 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989)
 
 
 [3]
 Although officers and members of staffs of state universities are exempted from Kentucky's classified merit system for state personnel, see Ky.Rev.St.Ann. Sec. 18A.115, and contracts for "permanent employment" are deemed at-will, Shah v. American Synthetic Rubber Corp., 655 S.W.2d 489, 491 (Ky.1983), the Kentucky Supreme Court has also held that parties may create a "for cause" employment relationship, even without additional consideration, "by clearly stating their intention to do so." Id
 Here plaintiff claims that he has a constitutionally-protected property interest in continued employment for three different reasons: (1) that he had a year-to-year contract with UK for fiscal year 1988-89; (2) that UK's personnel rules create a "just cause only" standard for termination; and (3) that he had an explicit oral agreement with UK, through Robert M. Drake, Jr., the former dean of the UK College of Engineering, that he would be allowed to engage in private consulting activities through the machine shop.
 The annual contract with stated salary, does no more than "create[ ] the inference of annual employment." Putnam v. Producers' Live Stock Marketing Ass'n, 256 Ky. 196, 202; 75 S.W.2d 1075 (Ky.1934).
 Plaintiff's reliance on various provisions found in UK's "Staff Personnel and Policy Procedures" ignores Rule 12.1 which expressly states that "University employment is at will and may therefore, be terminated at any time by either the employee or by the University in accordance with the procedures within these policies." Furthermore, to the extent that the "UK Staff Personnel and Procedures" is merely a policy and procedure manual, "[it] does not [a contract] necessarily make." Nork v. Fetter Printing Co., 738 S.W.2d 824, 827 (Ky.App.1987); McCart v. Brown-Forman Corp., 713 F.Supp. 981 (W.D.Ky.1988).
 Plaintiff's claim of an oral assurance of continued employment by Drake may state a claim and be enforceable under Kentucky law. See Shah, 655 S.W.2d at 491; Hammond v. Heritage Communications, Inc., 756 S.W.2d 152, 154-55 (Ky.App.1988); Shah v. General Elec. Co., 816 F.2d 264, 272-73 (6th Cir.1987).
 
 
 [4]
 Ky.Rev.St.Ann. Sec. 514.070 "Theft by failure to make required disposition of property" provides:
 (1) A person is guilty of theft by failure to make required disposition of property received when:
 (a) He obtains property upon agreement or subject to a known legal obligation to make specified payment or other disposition whether from such property or its proceeds or from his own property to be reserved in equivalent amount; and
 (b) He intentionally deals with the property as his own and fails to make the required payment or disposition.