### McCALL CO. v. WRIGHT.

(Supreme Court, Appellate Division, First Department.   June 18, 1909.)

1. INJUNCTION (§ 60*)—EMPLOYMENT CONTRACT—RESTRAINING BREACH.

Defendant having learned the secrets of plaintiff's business, and grown into a responsible position of a highly confidential character, contracted for a further term of six years, terminable by plaintiff on 30 days' notice, and containing a covenant that defendant should not engage in any other occupation during the term of his employment, but should use his best endeavors to promote plaintiff's business. *Held* that, defendant having voluntarily left plaintiff's employ, plaintiff was entitled to enjoin defendant from entering the employ of plaintiff's rival in business during the term of defendant's contract with plaintiff, though defendant's position with plaintiff was not so unique and extraordinary that another could not be found to fill his place.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 117–119; Dec. Dig. § 60.*]

2. MASTER AND SERVANT (§ 3*)—CONTRACT OF EMPLOYMENT—TERMS—REASONABLENESS.

A provision of an employment contract that the servant shall not enter the employ of the employer's trade competitor during the term of the contract is not unreasonable.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 2; Dec. Dig. § 3.*]

3. CONTRACTS (§ 10*)—EMPLOYMENT CONTRACT—MUTUALITY.

Where a contract for services imported a hiring by plaintiff as well as defendant's obligation to serve, it was not objectionable for lack of mutuality, though it did not in terms bind plaintiff to engage defendant to work.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 28; Dec. Dig. § 10.*]

4. CONTRACTS (§ 10*)—EMPLOYMENT CONTRACT—TERMINATION—MUTUALITY.

An employment contract was not objectionable for want of mutuality because it reserved to the master the right to terminate the contract on 30 days' notice.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 28; Dec. Dig. § 10.*]

5. MASTER AND SERVANT (§ 3*)—EMPLOYMENT CONTRACT—SERVANT'S COVENANT—TERMINATION.

Where an employment contract for a specified term was also terminable by the master on giving 30 days' notice, and provided that the servant should not engage in any other employment during the term, the servant was bound by such covenant only during the term of his employment, which was terminable either by expiration of the term, by mutual consent, or by notice given by the employer.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 3; Dec. Dig. § 3.*]

Appeal from Special Term, New York County.

Suit by the McCall Company against John H. Wright. From an interlocutory judgment sustaining a demurrer to plaintiff's complaint, it appeals. Reversed and remanded with leave to respondent to withdraw the demurrer and answer in 20 days.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

William P. Chapman, Jr., for appellant.
S. Clinton Crane, for respondent.

SCOTT, J.   Plaintiff appeals from an interlocutory judgment sustaining a demurrer to the complaint.   The action is an equitable one for the enforcement of a negative covenant by defendant not to engage for a limited time in any business which will compete with that carried on by the appellant.   The plaintiff is engaged in the business of designing and making dress patterns, printing, publishing, and circulating certain fashion publications, and general advertising.   It does a very large business, divided into different departments, and employs a large number of persons.   The defendant, who had been a bookkeeper in a department store, entered plaintiff's employ in April, 1901, as assistant to the manager of the sales department, at a salary of $20 per week.   His salary was increased from time to time until about October 8, 1903, when it became $50 per week.   Between April 1, 1901, and January 1, 1905, defendant filled many positions in the sales department, circulating and premium department, publication department, and as manager of the circulating and premium department, and factory superintendent.   His entire knowledge of the business has been gained while in plaintiff's employ.   It is alleged that the business of plaintiff has increased to great proportions, and spread all over the United States and Canada, mainly by reason of systems and methods devised and put in operation by its president, and which are not known to competitors in the business and are confidential in their nature. During the period of defendant's employment from April 1, 1901, to January 23, 1909, defendant had many opportunities to obtain knowledge of the plaintiff's business and of the system and methods used therein, and had many opportunities to obtain and did obtain secret and confidential knowledge and information concerning the plaintiff's customers and concerning the conduct and details in all of its branches. On January 3, 1905, a written contract of employment was entered into between plaintiff and defendant for a period of five years from January 1, 1905, subject to extension for a further term of five years at the option of plaintiff.   Defendant's salary was fixed upon an increasing scale from $3,000 for the first year to $5,000 for the fifth year, and, if the contract was extended for a second term of five years, defendant's salary was to be increased by $500 per annum until it amounted to $7,500.   This contract contained a covenant on defendant's part to engage in no other business during its term, and to use his best endeavors in plaintiff's behalf and interest.   Soon after making the contract, defendant was made general manager of plaintiff's business, and so continued until the contract was terminated on December 9, 1908.   The complaint alleges that:

"The defendant's knowledge of the business continued to increase, and his duties and responsibilities in like manner were increased and became of a more and more important and confidential nature, and during the time when he served as general manager, as aforesaid, the position which he held in the executive management of the plaintiff's business was exceeded in confidence and importance by only one other position in the plaintiff's employment having to do with the manufacture and marketing of its products, namely, that of the president of the company.   During the latter part of his

service as general manager, his duties, in fact, exceeded in importance and in their confidential character those which are usually devolved upon a merely administrative general manager, and he was informed and consulted about the general business policies of the company, and there were no secrets of the business on its practical side which were not open to him, and he shared in all of said secrets, which were numerous and important."

The complaint is replete with other allegations in detail respecting the defendant's experience and opportunities while in plaintiff's employ, all tending to sustain the general allegation that:

"The services performed by said defendant were special, unique and extraordinary, and the qualifications required for the satisfactory performance of the same were special, unique, and extraordinary, and could be acquired only by years of training and familiarity with the business."

On December 9, 1908, in consequence of defendant's violation of his agreement not to engage in any other business, the above contract was abrogated and defendant discharged from plaintiff's employ. He immediately sought re-employment, and after writing a contrite and apologetic letter he was re-employed on December 18, 1908, by a tentative agreement, at a salary of $80 per week. On January 2, 1909, a formal agreement was entered into between the parties providing for defendant's employment by plaintiff for a term of six years from January 1, 1909, at an increasing scale of compensation commencing at $6,000 per annum and running up to $8,500. The right was reserved to plaintiff to terminate the contract at any time upon giving 30 days' notice to defendant. This contract contains the following:

"The party of the second part (defendant) covenants to engage in no other occupation during said period (the term of his employment) and to use his best endeavors to promote the business and business interests of the party of the first part (plaintiff)."

The contract also contains the following:

"If the party of the second part, while this contract remains in effect, shall, in violation of its terms, enter into the employ or service or otherwise act in aid of the business of any rival company or concern engaged in the same or a similar general line of business, the party of the first part shall be entitled to an injunction, to be issued by any competent court of equity, enjoining and restraining the party of the second part, and each and every other person concerned therein, from the continuance of such employment, service or other act in aid of the business of such rival company or concern."

The plaintiff bases no claim upon this clause as coercing the discretion of the court, but relies upon it as an indication of the intent and purpose of the parties in inserting in the contract the restrictive covenant against the defendant's engaging in other occupations, and as evidence of the consideration which moved plaintiff to re-employ the defendant.

On January 23, 1909, the defendant entered into the employ of and became president of a rival company engaged in the same business as plaintiff, or a similar business, and undertook and attempted to resign and relinquish his employment by plaintiff. The plaintiff refused to accept the resignation or consent to the cancellation and abrogation of the contract between itself and defendant, and insisted that plaintiff should remain in its employment and desist from his employment with

the rival company. He refused to accede, and thereupon this action was commenced to obtain an injunction restraining defendant from entering into or continuing in the employ or service, or otherwise acting in aid, of the company with which he has associated himself, or any rival company or concern engaged in the same general line of business as the plaintiff, or a similar general line of business.

The demurrer was sustained at Special Term on the authority of Dockstader v. Reed, 121 App. Div. 846, 106 N. Y. Supp. 795, and the defendant now seeks to sustain the judgment by reference to that and a line of similar cases in which injunctive relief has been refused. In all of these cases, however, the complaint has proceeded upon the claim that the defendant's services to the plaintiff were so special, unique, and extraordinary that his place could not be filled, and hence, that the plaintiff, if deprived of such services, would lose the benefit of his contract of employment. In the present case, the plaintiff does not rest his prayer for relief upon this ground, but upon the ground that by entering the employ of a competitor, in violation of his agreement, defendant threatens to injure plaintiff by building up a competing business upon the foundation of the special knowledge and skill acquired during his employment by the plaintiff. This position is based, not upon the claim that defendant's services to plaintiff were special, unique, and extraordinary (although that fact is alleged), because it is not denied that defendant's place can be filled, but upon the proposition that defendant's qualifications for injuring plaintiff by advancing the interests of a competitor are special, unique, and extraordinary. There is a distinct and well-considered line of cases in which injunctive relief has been granted in cases like the present. Davies v. Racer, 72 Hun, 43, 25 N. Y. Supp. 293; Magnolia Metal Co. v. Price, 65 App. Div. 276, 72 N. Y. Supp. 792; Mutual Milk & Cream Co. v. Prigge, 112 App. Div. 652, 98 N. Y. Supp. 458; Mutual Milk & Cream Co. v. Heldt, 120 App. Div. 795, 105 N. Y. Supp. 661. The case of Magnolia Metal Co. v. Price, supra, resembles very closely the case at bar. The defendant had been employed by plaintiff for a term of years, and had covenanted that "in the event of his connection with the party of the first part being severed under this agreement he will not, either directly or indirectly, connect himself with any company or firm engaged in business similar to that of the party of the first part, nor will he himself engage in any business that would compete with the business of the party of the first part for a period of five years from the date of his connection being so severed." While in the plaintiff's employ, the defendant in that action was enabled to obtain confidential information relative to the plaintiff's method of doing business, the names, responsibilities, and requirements of its customers, reports of salesmen, and the like. The defendant resigned his employment with the plaintiff, his resignation was accepted, and he at once entered into the employ of a competing company as its president. This court unanimously held that the plaintiff was entitled to an injunction, for reasons clearly stated in the opinion of Mr. Justice Ingraham and which it is unnecessary here to restate. It is sufficient to say that they apply with equal force to the facts of the present case. The same relief has frequently been

granted in other jurisdictions under similar circumstances. Robinson & Co. v. Heuer, L. R. Ch. Div. 1898, vol. 2, 451; Rousillon v. Rousillon, 14 Ch. Div. 351; Carter v. Alling (C. C.) 43 Fed. 208. In the latter case, the court states the rule as follows:

"It seems to me that the rule clearly deducible from all the authorities is that an employer has the right to bind the employé not to go into the employ of a competitor for a reasonable time after his employment terminates, within the territory where the employer seeks his market; and whether such a covenant is reasonable and binding is a judicial question which must depend in each case upon its peculiar facts and circumstances."

It certainly cannot be claimed, upon the state of facts set forth in the complaint, that a restriction upon defendant not to engage with a trade competitor during the term of his employment by plaintiff is unreasonable.

It is claimed that the contract of employment is unenforceable for lack of mutuality. It is true that plaintiff does not by precise words engage to employ defendant for the term specified, but the whole contract is instinct with such an obligation on its part, and there can be no doubt that upon a fair construction it imports a hiring by the plaintiff, as well as an obligation to serve by defendant. Nor does the fact that plaintiff reserves the right to terminate it upon 30 days' notice deprive it of the element of mutuality. Such a clause is frequently inserted in such contracts, and, in view of defendant's violation of a former contract, was not an unreasonable clause to insert here. The defendant's covenant, as we consider, bound him only during the term of his employment. So long as his employment continued he was bound; when it terminated, by expiration of time or by mutual consent or by act of the plaintiff, he became free to engage in whatever occupation he chose. In this sense and to this extent the obligations of the parties were mutual and reciprocal. We are of the opinion that the complaint states a cause of action for equitable relief.

The judgment appealed from must therefore be reversed, with costs, and the demurrer overruled, with costs, with leave to respondent to withdraw the demurrer and to answer within 20 days upon payment of said costs. All concur.