FRANK A. ROZIER, Etc., Respondent, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, March 8, 1910.

1. **CONTRACTS: Sale of Material: Certainty of Terms.** An agreement, by which a quarry company agreed to furnish the other contracting party all the dirt and stone it could take out of a quarry, the price of the stone being fixed, was sufficiently definite, although no price was agreed upon for the dirt, the parties by their subsequent conduct fixing that price, and was sufficiently definite as to the quantity of material to be taken also, the quantity being all the rock the quarry company could take out of the quarry during the period of the contract.

2. ———: ———: **Mutuality.** At the time said contract was made, both parties knew what quantity of material would be taken out, and the quarry company became bound by its agreement to turn out what material it could by reasonable diligence and the other party became bound to take the output, and hence the contract was not lacking in mutuality.

3. ———: **Mutuality: Performance.** A contract lacking mutuality may become binding by performance.

4. ———: **Sale of Material: Construction.** Where a railroad company, through its superintendent, agreed with a quarry company to take all the material the latter company could get out during a specified period, it was bound to take such material, even though its superintendent mentioned he would divide the available funds between the quarry company and another quarryman.

5. ———: ———: **Action for Breach: Instructions: Allowing Recovery Outside Scope of Contract.** A quarry company and a railroad company entered into a contract by which the latter agreed to take all the rock excavated from a quarry. After taking the rock as well as the dirt which had been excavated, for some time, the latter company refused to longer do so. In an action for breach of the contract, an instruction which permitted a recovery for the profits the jury believed plaintiff would have made on dirt was erroneous; and the error was not harmless, although plaintiff disclaimed in evidence any intention of making claim for future profits which might have been earned on dirt, there being evidence that though the quarry was pretty well stripped some dirt remained.

Appeal from Ste. Genevieve Circuit Court.—*Hon. Chas. A. Killian,* Judge.

REVERSED AND REMANDED.

*W. F. Evans* and *Moses Whybark* for appellant.

(1) It is alleged in the petition that the receiver was authorized by the order of the court appointing him to operate the quarry. This was denied in the answer and no proof was offered by the plaintiff to support this averment in the petition. This was a material allegation necessary to be alleged, and therefore must be proved. Scott v. Robards, 67 Mo. 289; Pier v. Heinrich-

offen, 52 Mo. 333. (2) The quarry company was incorporated as a manufacturing and business company under article 9 of chapter 12 of the Revised Statutes of 1899, and the receiver therefore was appointed under sections 1338, 1339 and 1340 of that statute. The court therefore erred in overruling defendant's objection to the order of the court authorizing the receiver to sell the property and consult counsel, for the reason that that order conferred no authority upon the receiver to bring this suit, and it was brought without an order of the court authorizing him to bring it, and the objection should have been sustained. The court had no power to delegate the authority as was done in this case. R. S. 1899, sec. 1339; Cox v. Volkert, 86 Mo. 505; Thompson v. Greeley, 107 Mo. 577. (3) Instruction number 1, given on behalf of the plaintiff, submitted the question of both dirt and rock to the jury and authorized them to assess damages on account of the dirt as well as the rock under the contract, when the plaintiff himself testified that he had no particular contract about the dirt. McQuillin on Instructions to Juries in Missouri, sec. 95, p. 67. (4) There was no mutuality in the contract, and it was void. There never was a time when Rozier was under any legal obligation to furnish the defendant with a pebble-stone, or a spadeful of dirt, according to the strongest construction that can be given to the plaintiff's evidence. Unless both parties are bound by a contract, so that an action may be maintained by either against the other for a breach neither is bound. Campbell v. American Handle Co., 117 Mo. App. 19; Publishing & Eng. Co. v. Walker, 87 Mo. App. 508; Jones v. Durgin, 16 Mo. App. 370; Mers v. Insurance Co., 68 Mo. 127. (5) The proof of the contract adduced by plaintiff shows an agreement so uncertain and ambiguous that the intention of the parties can not be ascertained; there is nothing definite about it, and no obligation assumed so far as plaintiff is concerned. "To constitute an enforceable contract it

must be founded on a valuable consideration, and be definite in its terms." Wesson v. Horner, 25 Mo. 81; Burks v. Stam, 65 Mo. App. 455; 9 Cyc. 248-9; Crane v. C. Crane & Co., 45 C. C. A. 96; Cotton Oil Co. v. Kirk, 68 Fed. 791; Trans. Co. v. Bolt & Nut Co., 52 C. C. A. 25. The construction placed on the contract by the plaintiff is not permissible to prove its meaning. Dakan v. Ins. Co., 125 Mo. App. 451. (6) The acceptance of dirt and rock by the defendant from plaintiff, and payment therefor, did not validate the agreement; such accepted orders constituted nothing but sales at the prices named in the contract. Trans. Co. v. Bolt & Nut Co., 52 C. C. A. 25. (7) The evidence shows without contradiction that plaintiff dealt with the superintendent of defendant, Mr. Elliott, as such; that he was advised that Mr. Elliott was only authorized to expend $30,000, and would have to divide that amount with another quarry, and never agreed to expend any certain amount of this sum with him, but at most that he thought he could give him a majority, as Tlapek expresses it, of the amount he was authorized to expend. The testimony of plaintiff further shows that he received about $11,000 for stone and dirt. The instructions given for plaintiff wholly disregard this feature of the contract, and authorizes the jury to award plaintiff any amount of damages he may have sustained, irrespective of the amount Mr. Elliott could expend. The instructions were not warranted by the evidence. McQuillan on Instructions to Juries in Missouri, p. 67, sec. 95; Reynolds v. Railroad, 114 Mo. App. 675; Sweet, Demster & Co. v. Sullivan, 77 Mo. App. 134.

*T. B. Whitledge* and *John V. Noell* for respondent.

(1) If defendant entered into a contract with Mr. Rozier as receiver, it is estopped from denying his authority. In other words, it is not within the power of defendant after having received the benefit of the

contract and acted upon the same, to escape liability by repudiating the contract. 7 Am. and Eng. Law (1 Ed.), p. 29; Bigelow on Estop. (5 Ed.), 687; Greely v. Bank, 103 Mo. 212. (2) The verdict of the jury is conclusive as to weight of evidence and the appellant court will not disturb a verdict after a refusal to grant a new trial in the court below, on the ground that the evidence does not support the verdict except in cases where gross wrong has been done or the verdict is the result of passion, bias or prejudice. State v. Adams, 19 Mo. 246; Price v. Evans, 49 Mo. 396; Fletcher v. Drath, 66 Mo. 126; Chongnett v. Railroad, 152 Mo. 257; Lee v. Knapp, 137 Mo. 385; Mattoon v. Railroad, 49 Mo. App. 627; Rea v. Furguson, 72 Mo. 225. (3) In answer to point 3 of appellant's brief, respondent says that Frank A. Rozier testified that while the price of the dirt was not specifically agreed upon at the time of the contract made by him with Mr. J. H. Elliott, yet that Mr. Elliott on behalf of defendant agreed to take the dirt as well as the rock. But, the plaintiff at the trial made no claim of damages on account of defendant's refusal to take dirt, and introduced no evidence tending to show such refusal. Hence, the instruction number 1 given on behalf of plaintiff merely contained a clerical inaccuracy in referring to the dirt, and such clerical mistake was under the circumstances a harmless error which would not warrant a reversal of this case. R. S. 1899, sec. 1672. (4) The contract was not void for want of mutuality. Typewriter Co. v. Realty Co., 220 Mo. 525; Transportation Co. v. Bolt Co., 114 Fed. 771; Locomotive Co. v. Steel Casting Co., 155 Fed. 77; 3 Am. and Eng. Ency. Law (1 Ed.), p. 846; Botkin v. McIntyre, 81 Mo. 557; Publishing Co. v. Walker, 87 Mo. App. 508; Laclede Constr. Co. v. Iron Works, 169 Mo. 151; Levi v. Ins. Co., 61 Mo. 238; Glover v. Henderson, 120 Mo. 367.

GOODE, J.—This plaintiff is receiver of the Ste. Genevieve Quarry & Construction Company, having been appointed and duly qualified during the October term, 1906, of the circuit court of Ste. Genevieve county. Late in February, 1907, he entered into a contract with defendant to furnish and deliver to it all the dirt and stone he could take out of the quarry of the company of which he was receiver, from and after the date of the contract until December 31, 1907. The petition alleges the railroad company agreed to pay plaintiff twelve cents a cubic yard for the dirt and sixty cents a cubic yard for the stone, but plaintiff himself testified there was no specific agreement about the price of the dirt, as what the railroad company wanted was the rock and it agreed to take the dirt in order to get the rock. Plaintiff testified he told J. H. Elliott, superintendent of the railroad company, plaintiff could take out from ten to fifteen cars of material a day and, too, that each carload would average about thirty cubic yards of material. Elliott said the roadmaster, Kelly, would arrange about the price of dirt. Plaintiff stated to Elliott as follows: He (plaintiff) did not desire to go to the expense of opening the quarry and buying machinery for it unless there was a certainty of the company taking the output. A lease on the quarry until December 31, 1907, was the only asset of the Ste. Genevieve Quarry & Construction Company. It would take a great deal of money to prepare to get out the material and plaintiff would have to advance it. Elliott told him not to be uneasy, for the company would take all the rock and dirt plaintiff could get out. A witness who was present during the conversation testified substantially as plaintiff, only he said nothing about the agreement between plaintiff and Elliott referring to dirt, as well as stone; that plaintiff said he wanted the railroad company to take the rock which would be quarried and furnish cars for it. This witness' testimony will be shown best by this excerpt: "Mr. Rozier says, 'I cannot go ahead with

this unless I have the assurance you will take this rock,' and Mr. Elliott says, 'Sure, we need the rock and I will take it,' " further saying the company had about $30,000 to spend for such material, but he would have to divide the amount with another quarry, but would give plaintiff the major part of it; Elliott said: "I am satisfied I can give you a majority; I will take all you can get out." Elliott denied making the contract as testified, and the substance of his version was he only agreed to take such quantity of stone as he wished. Plaintiff equipped the quarry, began to operate it early in March, and from then on until the latter part of September, furnished material consisting of dirt and stone to the company, and it accepted the material as it was taken from the quarry to the amount of $11,000. Elliott then notified plaintiff the company would take no more, and as plaintiff said, gave him "about fifteen minutes to quit work" just when the dirt had been stripped from the quarry and plaintiff had got down to the rock and was ready to work it. Plaintiff said he did not "intend to fool with dirt" from that on, did not need to handle any more dirt; further saying his claim in this case was for rock and not for dirt. He estimated the cost of getting the rock out was forty cents a cubic yard, which would net him a profit of twenty cents. The purpose of this action is to recover the profit which would have been earned by performing the contract from the time defendant refused to take any more material to the date of the expiration of the contract on December 31st.

In the instructions granted for plaintiff, the jury were authorized to return a verdict in his favor if they found defendant had agreed to take and pay for all the rock and dirt taken out within the period mentioned, furnished and delivered to defendant from the quarry of the Ste. Genevieve Quarry & Construction Company at an agreed price per cubic yard, and further found defendant refused, before the expiration of the time, to take rock and dirt, and by reason of this refusal to

take and pay for rock and dirt, plaintiff had sustained damage. The other instructions also proceeded on the theory that the contract was for both rock and dirt.

The jury returned a verdict for plaintiff, assessing his damages at $3500 and judgment having been entered for that sum, defendant appealed.

Defendant's counsel strike at the foundation of the judgment, contending the alleged agreement declared on lacked mutuality and was too indefinite to constitute a valid contract, for which reasons it is non-enforceable. The supposed want of certainty consists of failure to state what quantity of material was to be furnished and taken and the price of the dirt. We regard the agreement as sufficiently certain to be a valid contract. The term during which material was to be supplied was fixed and ran from the date of the agreement in February to the expiration, December 31, 1907, of the leasehold plaintiff held. The price of rock was fixed at sixty cents a cubic yard, and though no price was agreed on at first for the dirt, the parties by their conduct fixed that price at twelve cents a cubic yard. The quantity to be furnished and accepted was all the material, or, in any event, all the rock plaintiff could take out of the quarry during the period mentioned; possibly subject to the exhaustion of the money available for the purchase of such material. Moreover plaintiff estimated with Elliott the output of the quarry, fixing it at twenty to twenty-five carloads a day of thirty cubic yards each. The other element said to be lacking and needed to give the agreement enforceable certainty and also to give it mutuality of obligation, was a stipulation by plaintiff binding himself to supply a minimum quantity of material. It is argued he was not bound to furnish any; not "a pebble-stone or a spade full of dirt," counsel for defendant say. This argument, the facts considered, is more specious than sound. Elliott, as superintendent of defendant company, had been taking material from that quarry before the Quarry Company

passed into the hands of a receiver and was well aware of its average output. In fact what the receiver was trying to do after he took charge, was to get a renewal of the arrangement, which had been previously carried out between defendant and the Quarry Company. At the time the contract was formed, both parties knew what quantity of material would be taken out and plaintiff became bound by his agreement to turn out what he could by reasonable diligence and defendant bound to take the output. [Excelsior Wrapping Co. v. Messinger (Wisc.), 93 N. W. 459.] Moreover, when plaintiff was notified in September defendant would take no more material, the quarry had been worked by plaintiff and deliveries from it made to defendant for more than six months, and its capacity thereby demonstrated, a fact which likens this case to Louisville, etc., R. R. v. Coyle, 8 L. R. A. (n. s.) 433, wherein it was held a contract which might have lacked mutuality at first became binding by performance. That case is very like this, as is also Herrick v. Wardwell, 58 Ohio St. 299, which was decided on the same principle. There is not present here the fact of either plaintiff or defendant having the right or option to make the quantity of material furnished or accepted as small as might be wished, down to nothing. It is rather the instance of two parties who are perfectly familiar with the capacity of a business, agreeing with each other and one undertaking to furnish the product up to capacity, and the other to take and pay for it, which agreement had been largely carried out before one party elected to stop performance. We think by the weight of modern authority such an understanding is a valid and effective contract, and cite as relevant though not so much in point as the two cases last cited, the following: National, etc., Co. v. National, etc., Co., 155 Fed. 77, 11 L. R. A. (n. s.) 713; Loudenbeck v. Phosphate Co., 121 Fed. 298; Wells v. Alexander (N. Y.), 15 L. R. A. 218; Cold Blast, etc., Co. v. Bolton Nut Co., 57 L. R. A. 692; Lumber Co. v. White

Breast Coal Co., 160 Ill. 85; Great Northern R. R. Co. v. Withan, L. R. 9 C. P. 16. The case in hand is to be distinguished from Campbell v. Am. Handle Co., 117 Mo. App. 19, 94 S. W. 815, where there was no agreement to sell the whole yield of the factory, but simply to sell and deliver to the defendant timbers of certain length without in any way designating the quantity.

Just what the terms of the contract entered into by the parties were must be determined by the triers of the fact, and it is material to determine them accurately. If Elliott's testimony is true, he only bound himself to take material at his pleasure, with the right to cease taking it when he wished. If this was the agreement, there can be no recovery of damages, for defendant might stop taking at any time. The evidence for plaintiff presented the possibility of the agreement having been made in either of two forms of different consequences. It might be inferred from the testimony of some of the witnesses for plaintiff, that though Elliott agreed to take what rock could be quarried during the stipulated period, he qualified his agreement with the proviso he would only take from plaintiff material to the amount of the major part of $30,000 which he had on hand to expend for dirt and rock. If this was the understanding, inasmuch as Elliott actually took $11,-000 of material and paid for it, he was only bound thereafter to take a quantity, the price of which would exceed $4000 by any sum. If, however, as other testimony went to prove, he agreed to take all the material plaintiff could get out during the period, he was bound to do so even though he mentioned he would divide the available funds in his hands between plaintiff and another quarryman.

All the instructions for plaintiff proceeded on the theory defendant was obligated by the contract to take all the dirt and rock taken out of the quarry by plaintiff, though the latter testified he made no claim for future profits which might have been earned on dirt. We are

asked to hold this was harmless error because plaintiff testified he had the rock stripped of dirt and thereafter would have tendered only rock. The testimony was not uniform to that effect. Some of plaintiff's witnesses gave testimony which looked the other way. One of them said when work was stopped in September, the quarry was in pretty good shape to get out stone as a great deal of the bluff had been cleared up; that they did not get out all the dirt before the quarry stopped, but the quarry was in pretty good shape. Another witness testified a great deal of dirt had been stripped off and there would have been little to handle when the quarry was closed down. In view of such testimony we are unwilling to hold defendant could not have been prejudiced by authorizing the jury to assess damages "for the net profit which he (plaintiff) lost by reason of defendant's refusal to accept and pay for dirt and stone in compliance with his contract." The court further instructed "net profit" meant the difference between the contract price "of said stone and dirt and the cost of quarrying and delivering the same on board defendant's cars." The verdict was for a considerable sum, and we are unwilling to say in the face of the instructions, the jury allowed nothing as damages for the profit they believed plaintiff would have made on dirt after September, but assessed damages only for the profit he would have earned on rock.

The judgment is reversed and the cause remanded. All concur.