**BIG COLA CORPORATION et al. v. WORLD BOTTLING CO., LIMITED.**

No. 9327.

Circuit Court of Appeals, Sixth Circuit.

April 8, 1943.

Ben C. Welch, of Memphis, Tenn. for appellants.

Harry McEnerny Jr., of New Orleans, La., and Harold W. S. Leeker, of Memphis, Tenn. (Harold W. S. Leeker and Frank J. Glankler, both of Memphis, Tenn., Harry McEnerny, Jr., of New Orleans, La., Canale, Glankler, Loch & Little, of Memphis, Tenn., and Legier, McEnerny & Waguespack, of New Orleans, La., on the brief), for appellee.

Before ALLEN, MARTIN, and McALLISTER, Circuit Judges.

McALLISTER, Circuit Judge.

In May, 1939, appellee World Bottling Company entered into a contract with appellant Big Cola Corporation in which appellee granted the right to manufacture a soft drink concentrate, known as "Dr. Nut," according to appellee's secret formula, as well as the exclusive right to use the registered name "Dr. Nut" in the sale of the concentrate in all states except Louisiana. Adjudication of the rights of the World Bottling Company binds the other appellants of record; and we shall, therefore, refer only to a single appellant as representing all. Under the contract, appellant agreed to pay appellee certain royalties on each gallon of the product which it made and sold. It was further provided by the agreement that appellant keep accurate records of all ingredients purchased by it and used in the making of the concentrate; that such records be open at all reasonable times to the inspection of appellee; and that monthly reports covering the concentrate made and sold be furnished to appellee.

In September, 1940, appellee, becoming dissatisfied with the information furnished by appellant, made an examination of its books and ascertained, according to its claim, that due to an inadequate system of accounting which was maintained by appellant, it was impossible to determine the

actual extent of its operations. Thereafter, in March, 1941, appellee declined to accept further payments of royalties from appellant and filed its bill, seeking an adjudication that the contract was void and for remedy by injunction. After trial without a jury, the district court found that the contract was void for lack of mutuality, and decreed relief appropriate to its determination. On review, the issue is narrowed to the question—whether the contract lacked mutuality.

The record on appeal does not contain the contract in controversy and, except for the briefs, we are informed of its terms, including, the foregoing references, only by the trial court's findings of fact and conclusions of law; which, however, as to the stipulations of the contract are undisputed.

In addition to what has been previously recited with reference to the agreement, the court found that the contract was for an indefinite term; that appellee could cancel only if appellant failed to keep adequate records and remit royalties for as much of the product as it manufactured; that appellant had the unqualified right to cancel it on thirty days' notice, if it should prove unprofitable; and that the determination of the unprofitableness of the contract was left solely to the discretion and whim of appellant. Furthermore, the court found that while appellee was bound by the contract in perpetuity, appellant could cancel at will, and as long as the contract was in force, appellant was not bound to do or refrain from doing anything, and that appellant "did not promise to do anything or to refrain from doing anything, and any assumed or imagined obligation upon defendants' (appellant's) part, was subject to their unqualified right to cancel at any time."

From appellant's brief we may conclude that the following were stipulations of the contract:

"In the event that the said party of the second part should find that the manufacture of said concentrate is not profitable, then upon giving thirty (30) days notice to the party of the first part of its desire to cancel this agreement, this agreement shall immediately become null and void, and all the rights granted herein to said party of the second part shall automatically become the property of the party of the first part.

"Failure of the party of the second part to carry out the terms of this agreement promptly and to pay the amounts due to the party of the first part within thirty (30) days of the dates upon which they fall due, shall be considered a breach of this agreement, and the party of the first part reserves the right to cancel this agreement under such circumstances."

However, the foregoing provisions are not in conflict with the court's findings.

It is contended by appellant that mutuality may be implied from the contract in this case. Most of the decisions relied upon, however, have to do with the certainty of the terms of a contract. In several of the cited cases there were stipulations that one party would furnish or sell materials and the other would pay for or buy them; and the question was what quantity was to be so furnished or purchased. Minnesota Lumber Co. v. Whitebreast Coal Co., 160 Ill. 85, 43 N.E. 774, 31 L.R.A. 529; Feuchtwanger v. Manitowoc Malting Co., 8 Cir., 187 F. 713; Dark Tobacco Growers' Coop. Ass'n v. Mason, 150 Tenn. 228, 263 S.W. 60; Rozier v. St. Louis & S. F. R. Co., 147 Mo.App. 290, 126 S.W. 532. In the instant case, we have no mutual promises. In Mississippi River Logging Co. v. Robson, 8 Cir., 69 F. 773, it was held that where a logging company agreed to drive logs for a specified consideration, the fact that the contract did not show that the promisee gave a consideration for the promise, did not render the contract void for mutuality inasmuch as it appeared that previous to the logging company's agreement, plaintiff had executed a release of various claims he had against it, and that such release could be implied as a consideration for the logging company's agreement. In Butler v. Thomson, 92 U. S. 412, 23 L.Ed. 684, the question was whether a memorandum of sale signed by agents of a purchaser and a seller, bound the parties. In Frierson v. International Agricultural Corp., 24 Tenn.App. 616, 148 S.W.2d 27, where a party paid a certain sum for the privilege of holding certain mining property, with rights to mine it or not, for a period of thirty years, suit was filed to cancel the lease on the ground that defendant had failed to mine the property and failed to pay royalties. The Court of Appeals of Tennessee affirmed dismissal of the bill, holding that defendant had paid for its rights to retain the leased premises

without obligation to exploit or develop them within the period above mentioned. The application of these cases is not controlling in the present controversy.

In this case, as far as can be ascertained from the contract, appellant did not agree to manufacture or sell any amount of appellee's product. Its only obligation was to keep an account of amounts sold and pay royalties—if it did sell any. It did not promise to do anything or refrain from doing anything; and it could cancel the contract if it felt it was unprofitable.

On the question of mutuality, it may be said at the outset that the mere fact that a party fails to bind himself expressly to the performance of contract stipulations does not in itself render a contract void for want of mutuality. An obligation will be implied when it is clear that such was intended. Crossland v. Kentucky Blue Grass Seed Growers' Co-op. Ass'n, 6 Cir., 103 F.2d 565. As otherwise expressed, when the whole contract is "instinct with an obligation," an agreement of a party to perform may be implied. Globe Steel Abrasive Co. v. National Metal Abrasive Co., 6 Cir., 101 F.2d 489. See McCall Co. v. Wright, 133 App.Div. 62, 117 N.Y.S. 775. So where a party promised an agent that he should have the exclusive privilege of marketing designs, and the agent made no return promise, but notification to the agent recited that the party's compensation for the grant of the exclusive privilege was to be one-half of the profits resulting from the efforts of the agent, who was to make monthly accountings and to take out copyrights and trade-marks as might be necessary in his discretion to protect the rights and articles affected, it was held that a promise on the part of the agent to use reasonable efforts in carrying out the contract, was to be implied. Wood v. Lucy, Lady Duff-Gordon, 222 N.Y. 88, 118 N.E. 214. See also Moran v. Standard Oil Co. of New York, 211 N.Y. 187, 105 N.E. 217. Thus, although it may be said that the fact that a party fails to bind himself expressly to perform, may be an indication of lack of mutuality, nevertheless, upon a consideration of the entire contract, if his promise can be implied, the agreement is binding.

Various factors enter into a determination of whether a promise is to be implied from the contract and understanding of the parties, and the question, in the adjudicated cases, is often linked to consideration of contracts void for uncertainty.

Absence of express promise, duration of the contract, performance conditioned only upon the wish or convenience of one party, termination at whim, and whether the terms of the agreement were ascertainable, are among the various circumstances that have been considered decisive of the certainty and mutuality of contracts.

In the Crossland case, supra, while the duration of the contract was indeterminate, and the acts to be performed under the agreement of employment were indefinite, it was held that the contract did not lack mutuality. It was said that where the duration is indefinite, a contract must be performed within a reasonable time; and obligations, even when incapable of exact measurement, may be implied—the test of performance being the exercise of good faith and the expenditure of reasonable effort to the end that the agreement may be fruitful to the contracting parties. In Ken-Rad Corp. v. R. C. Bohannan, Inc., 6 Cir., 80 F.2d 251, where a contract was challenged as lacking mutuality on the ground that a provision, requiring a distributor to maintain a quantity of goods sufficient to meet the needs of dealers, was indefinite, it was held that such a quantity, while not specified in the contract, was determinable. In a contract, providing that a party would buy from another all the named goods that he required on his sales route, it was held that such party's obligation was to purchase all the goods that he could use on his route, and to purchase them from no other, and it was stated: "All the circumstances which go to make up this contract are instinct with an obligation to purchase, even though it may be imperfectly expressed." Ehrenworth v. George F. Stuhmer & Co., 229 N.Y. 210, 128 N.E. 108, 110.

But where a manufacturer agreed to sell to a sales company as many cigars of a certain brand as the latter desired for its wants, the contract to continue during the life of the brand, as long as the sales company cared to sell the cigars to the trade, it was held that the manufacturer was completely left to the caprice of the salesman, and that the contract lacked mutuality. A. Santaella & Co. v. Otto F. Lange Co., 8 Cir., 155 F. 719. In its opinion in the foregoing case, the court referred to Cold Blast Transp. Co. v. Kansas City Bolt & Nut Co., 8 Cir., 114 F. 77, 57 L.R.A. 696,

where a distinction was observed between contract stipulations providing for delivery of such an amount of goods as a purchaser may want or desire in his business, and such an amount as is needed, required, or consumed in such business. None of the foregoing cases involved the question of the right of cancellation as bearing upon mutuality.

Where, however, a manufacturer of motor cars granted a party an exclusive right to sell its machines within a certain territory, agreeing that they should be invoiced to the party at stated prices, that the party should deposit $1,000 and order at least 50 machines during the year, selling under a guaranty for a year, maintaining a repair shop and keeping at least one machine in stock for exhibition, it was held, since the manufacturer did not obligate itself to sell any machines and reserved the right to cancel the contract at any time, that the agreement, so long as it remained executory, was void for want of mutuality. Velie Motor Car Co. v. Kopmeier Motor Car Co., 7 Cir., 194 F. 324. See also Huffman v. Paige-Detroit Motor Car Co., 8 Cir., 262 F. 116.

■ Where an arbitrary and unrestricted right of cancellation is reserved to one or both parties in a contract between a manufacturer and distributor, such contract is binding only to the extent that it has been performed. Bendix Home Appliances v. Radio Accessories Co., 8 Cir., 129 F.2d 177.

In Miami Coca-Cola Bottling Co. v. Orange Crush Co., 5 Cir., 296 F. 693, appellant sought to enjoin cancellation of a contract whereby appellee was granted the exclusive right to manufacture "orange crush" and to bottle and distribute it under appellee's trade-mark. Appellant agreed to purchase a specified quantity of the concentrate, to solicit orders, and to undertake to promote the sale of the drink and develop an increase in the volume of sales. Appellee agreed to supply its concentrate to be used in the maunfacture of the drink at stated prices, and to do certain advertising. The license granted was perpetual, but gave appellant the right to cancel the contract at any time. After appellant bought a quantity of concentrate, manufactured the drink, and was engaged in the performance of its obligations, appellee gave notice that it would no longer be bound. It was held that the contract was void for lack of mutuality since appellant

did not promise to do anything and could at any time cancel the contract. See Dennis v. Slyfield, 6 Cir., 117 F. 474; Terre Haute Brewing Co. v. Dugan, 8 Cir., 102 F.2d 425; Silbernagel v. Hirsch Distilling Co., 8 Cir., 99 F.2d 829.

■ A consideration of the contract provisions in the instant case, as recited in the court's findings, indicates that appellant did not bind itself to the performance of any obligations, either expressly or by implication. It secured the right to make the product from a secret formula and the exclusive right to use the registered name, outside of Louisiana. Nowhere does it appear, nor can it be inferred from the dealings between the parties or the circumstances of the case, that appellant was under any obligation to appellee to sell a certain amount, a reasonable amount, or any amount of the product; or to use its best effort, or any effort, in promoting such sales. Apparently all appellant wanted to do was to see if it could make some money in this particular business. If it turned out successfully and was profitable, it would continue; and appellant alone had the right to decide whether the contract was to be abandoned. The fact that it was to make reports from time to time, and pay a certain royalty on goods which it might manufacture and sell, raises no implication that it was bound to carry out any obligation to sell or promote the sale of the product. Even on sales from day to day, it would be necessary to agree as to how much appellant would be obliged to pay appellee for the privileges granted. The absence of any promise of performance on the part of appellant—taken together with its reservation of right to cancel, leaves no circumstances in the case from which conclusions may be drawn that the agreement between the parties was instinct with an obligation. From the foregoing, it is our conclusion that the district court properly held that the contract was void for lack of mutuality.

Complaint is made that, on decreeing the contract to be void, the trial court erred in not placing appellant in statu quo. It appears that appellant expended considerable money and effort in promotional work, advertising, and in registering the name of the product in many states. Appellant, however, did not ask in its answer for repayment of the sums expended or allowances for the value of the services render-

ed, and the question was in nowise presented by the pleadings on which the case was tried.

■ It is true that there was some evidence of such work and expenditure, but this proof appears to have been directed to a showing of what had been done under the contract on the theory that appellant's performance and appellee's acceptance thereof, effected mutuality—or that mutuality could be implied therefrom. The trial court, in its findings, held that under the proofs, appellant was not entitled to any award on this claim. Thereafter, appellant moved for a rehearing or reopening of the case in order to introduce proof to sustain its contention that it should be given an allowance for these items; but the trial court denied the motion. We find no error therein. Appellant may have the right to recover in another action on proof of the value to appellee of its expenditures and services. See Miami Coca-Cola Bottling Co. v. Orange Crush Co., supra.

■ Inasmuch as a defendant's claim on an implied contract could either be the basis of a separate action or might be pleaded as a counterclaim, it was not obliged to plead it in a plaintiff's suit, and judgment thereon, under the doctrine of res adjudicata, would not preclude such defendant from bringing an independent action on the separate right of action. See Brown v. First National Bank, 8 Cir., 132 F. 450. Having unsuccessfully contested appellee's action on the ground that the contract was mutual, the right of appellant to recover on an implied contract may be said to be analogous to the right of a plaintiff under the doctrine of election of remedies. Thus, where a party failed in attempting reformation of a written contract on the ground of mistake—seeking to enforce the agreement as so modified—it was held that such suit did not constitute an election of remedies which precluded enforcement of the contract as written; Henderson Tire & Rubber Co. v. Gregory, 8 Cir., 16 F.2d 589; and where a party sued on an express contract and was defeated, its suit did not constitute an election of remedies precluding it from thereafter maintaining a suit on a quantum meruit. Water Light & Gas Co. v. City of Hutchingson, 8 Cir., 160 F. 41, 19 L.R.A.,N.S., 219. Likewise, a judgment that a plaintiff could not recover on a contract did not preclude him from pursuing the proper remedy to enforce his claim for compensation for services rendered. Gibboney v. Board of Chosen Freeholders, 3 Cir., 122 F. 46; Matt J. Ward Co. v. Goelet, 230 F. 979. See also Globe Steel Abrasive Co. v. National Metal Abrasive Co., supra.

■ While under the Federal Rules of Civil Procedure, it is provided that, generally, the rights of the parties shall be adjudicated in one action, Rules 1, 12(b), 13, 28 U.S.C.A. following section 723c, nevertheless, under Rule 13(b), pleadings may state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim. The difference between the compulsory requirement of stating counterclaims under Rule 13(a) and the permissive provision of stating such claims under 13(b), depends on whether such claims arise "out of the transaction or occurrence that is the subject matter of the opposing party's claim." Where a counterclaim is an essentially independent action, it is a permissive counterclaim; and even where pleaded in answer to an opposing party's claim, the trial court is given discretion to order separate trials of claim and counterclaim. See Rules 13(i) and 42(b), Federal Rules of Civil Procedure.

■ All pleadings shall be so construed as to do substantial justice. Rule 8(f), Federal Rules of Civil Procedure. Appellee's complaint asked for adjudication that the alleged contract was void, and for injunctive relief. Appellant contested on the ground that the contract was mutual and valid. On a holding that the contract was void, appellant has an unadjudicated and independent right of action on an implied or constructive contract. Winton v. Amos, 255 U.S. 373, 393, 41 S.Ct. 342, 65 L.Ed. 684. To such a claim appellee has, of course, the right to interpose a counterclaim. See Moore's Federal Practice, Vol. 1, sec. 13.02, p. 681. The statement of the foregoing assumes, however, that such independent action, if brought in a federal court, complies with jurisdictional requirements.

The judgment of the district court is affirmed.