BERNARDINO GONZÁLEZ, Plaintiff, Appellee and Appellant, *v.* JOSÉ A. AGOSTINI ET AL., Defendants, Appellants and Appellees.

No. 11519. Argued April 2, 1956.—Decided June 28, 1956.

*Germán Rieckehoff* and *Luis Blanco Lugo* for defendants, appellants and appellees. *Wilfrido Roberts* and *José L. Feliú Pesquera* for plaintiff, appellee and appellant.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

Bernardino González brought an action for damages in the Superior Court against José A. Agostini and United

States Casualty Company, for alleged defects in the construction of two buildings and nonperformance of the conditions of the contracts.

The complaint states two causes of action. In the first it is alleged that on September 14, 1950, plaintiff and defendant Agostini entered into a contract whereby the latter agreed to construct for the former a commercial and residential building in Bayamón, Puerto Rico, at a cost of $19,695, within a period of 150 days counted from the date of the contract, and in accordance with the plan and specifications of plaintiff; that in the middle of May 1951, the defendant received from plaintiff the last instalment of the agreed price for the construction of the building, and delivered the building to plaintiff; that the defendant failed to comply with the conditions of the contract by not following the plan and the specifications agreed upon, and that the construction had several defects and deficiencies which are set forth in detail; that as a consequence thereof plaintiff has suffered damages estimated at $22,800. It is further alleged that codefendant United States Casualty Co. and the defendant entered into a contract, whereby the former became liable to plaintiff for any damages resulting from any violation of the construction contract in question.

In the second cause of action it is alleged that on June 13, 1951, plaintiff and defendant Agostini entered into a contract whereby the latter agreed to construct for the former, at a cost of $19,000, another commercial and residential building adjoining the building involved in the first contract; that this construction would be done in accordance with the plans and specifications of plaintiff within a period of 150 days counted from the date of the contract. It is further alleged that on December 31, 1951, the defendant received the last instalment of the agreed price, and delivered the construction to plaintiff; that the defendant failed to construct the building according to the agreed plan and specifications, and that it has defects and deficiencies which have caused him damages,

which are set forth in detail. Lastly, it is alleged that co-defendant United States Casualty Co. executed another warranty contract similar to that mentioned in the first cause of action.

After several motions and preliminary incidents, the defendants filed an amended answer admitting the execution of both construction contracts as well as of the performance bonds, and denying, in general, the other essential facts of the complaint, setting up, in addition, several defenses, among these the defense of res judicata as to the second cause of action. Defendant United States Casualty Co. on its part presented a cross-claim against codefendant Agostini, alleging that by virtue of an exoneration agreement the latter agreed to pay any sum disbursed by the former by reason of the execution of the bonds. Agostini admitted this fact.

After a trial on the merits, the lower court rendered judgment ordering the defendants to pay solidarily to plaintiff, for damages, the total sum of $5,668, plus costs and $400 for attorney's fees. It also ordered defendant Agostini to pay to the insurance company, codefendant herein, any sum paid by the latter to plaintiff by virtue of this judgment.

Both parties appealed. We consider first the appeal of the defendants.

██ Defendants-appellants charge that the trial court erred in dismissing the defense of res judicata. The dismissal was based on the fact that the defendants did not seasonably set up that defense, either in the first answer to the complaint or in the preliminary defenses raised by motion.

We do not stop to consider this question since the defense of res judicata would not prevail even if it had been timely raised. Let us see why. This defense was interposed against the second cause of action which, we have seen, arose from the second contract entered into by the parties on June 13, 1951. The former suit on which the defense of res judicata was predicated was brought in the Bayamón District of the former District Court by Agostini against González, to

collect a certain debt owed under the first contract entered into on September 14, 1950. The first cause of action in the present litigation is based on the first contract mentioned, but the defense of res judicata was not pleaded against that first cause of action but against the second one. But since both causes of action arise from different contracts, González was not bound by Rule 13 (a) of the Rules of Civil Procedure to claim in the Bayamón suit, by counterclaim, the damages claimed in the second cause of action of this suit, although under subd. (b) of said Rule, it was permissible to do so.[1] Barron and Holtzoff, pp. 795, 796, 805, and 806; *Williams* v. *Robinson*, 1 F.R.D. 211; *Big Cola Corp.* v. *World Bottling Co.*, 134 F.2d 718; *cf. Sastre* v. *Cabrera*, 75 P.R.R. 1. The error was not committed.

In the second assignment, defendants-appellants maintain that the lower court erred in not holding that plaintiff's claim under the first contract had prescribed.

In the first contract the parties agreed:

"In order to guarantee the faithful performance of this contract, the contractor shall deliver to the owner a 'performance bond' for the full amount of the contract.

"This bond shall guarantee on the part of the contractor the following: The contractor guarantees the work to be constructed under the contract against any defect either of the materials or of the labor, and, upon demand by the owner, he shall correct any defect which may arise in the construction due to the materials supplied by the contractor or to the labor, supplied by the contractor, free of cost to the owner, for a period of thirty days after delivery." (Tr. Rec. 21.)

---

[1] Rule 13 provides in subds. (a) and (b):

"(a) *Compulsory Counterclaims.*—A pleading shall state as a counterclaim any claim, not the subject of a pending action, which at the time of filing the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

"(b) *Permissive Counterclaims.*—A pleading may state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim."

The building constructed under the contract was delivered to plaintiff on May 15, 1950,[2] and the complaint in this case was filed on November 24, 1950, after the agreed 30-day period had already expired. However, § 1483 of our Civil Code (1930 ed.), 31 L.P.R.A. § 4124, provides:

"The contractor of a building which may have been destroyed by reason of defects in the construction shall be liable for the losses and damages if said building should collapse within ten years, to be counted from the completion of the construction; and during the same time the same liability shall be incurred by the architect who may have directed the work if the collapse is due to defects in the ground or in the direction.

"If the cause should be the noncompliance of the contractor with the conditions of the contract, the action for indemnity may be brought within fifteen years."

The trial court held that the applicable period was the period fixed by the Code rather than that agreed upon by the parties.

We have not doubt that the warranty period fixed by § 1483 of our Civil Code affects the public interest and security. Consequently, a waiver of that period is contrary to public order and, hence, is void. In his commentaries on the equivalent section of the Spanish Civil Code, Scaevola says:

"Can the waiver of the period of warranty be stipulated?

"Let us state the first point more concisely: Can the architect and the contractor agree on a warranty period if, after warning the owner of a defect in the ground, of the poor quality of the materials in the event the owner furnishes them, or of the inconvenience and danger of altering the plans for the construction, they yield to the owner's demand? Commentator Manresa very discreetly points out that, in his opinion, 'the architect is not relieved of liability if the cause of the destruction is the defect in the ground, even if he shows that he gave the owner due notice of such defect, for his duty in this case is not to follow the latter's instructions but to refuse to undertake the work,

---

[2] According to the evidence, plaintiff-appellee did not receive the buildings to his entire satisfaction.

because it is in the public interest.' This is the same argument adduced by a majority of the exponents of the French Code, in opposition to Duranton and Taulier, to which we subscribe fully.

"If the first problem affects the public interest and security, the second affects the private interest. Can the contractor or architect and the owner stipulate the waiver and release of the warranty agreement so that, if within ten years the building should collapse or its demolition were ordered because of visible signs of deterioration, they would not have to indemnify the owner? Section 637 of the German Code states that a stipulation to eliminate or limit the contracror's liability for defects in the work will not be valid whenever the contractor conceals them fraudulently. The precedent is most interesting, but, is it adaptable to our civil law? It is doubtful. For the time being, if the warranty period of a construction for the defects which may be discovered during that period is a precaution similar to the warranty in a sale, it must be noted that the same spirit which prevails in § 637 of the German Code prevails in § 1485 of the Spanish Code, which authorizes the making of a stipulation to waive the warranty, provided the vendor is not familiar with the hidden defects of the thing sold, for, if he is, such waiver would be deemed nonexistent. The precautions, therefore, may generally be waived since they affect only the private interest. The principle of freedom of stipulation, which is the dogmatic basis of a contract, has the same trend of thought. (Section 1255.)

"Which are the reasons adduced to the contrary? In our opinion, one reason is that, although a stipulation waiving the warranty period affects, as already stated, the private interest, it does not come within its sphere, and another, that the freedom of stipulation is limited by the principles of public morals and interest. If the stipulation in question were valid, an unconventional architect would out-do himself to please a covetous owner, and the public security and interest would be left without the protection implied in the personal liability of an administrative technician and of an engineer contractor. For this reason, we believe that a stipulation whereby the owner waives the warranty period is immoral, contrary to public interest, and, hence, null and void, and that the parties bound principally or subsidiarily by a building contract may bring an action for annulment." Scaevola, *Comentarios al Código Civil Español,* Vol. 24, pp. 109–11.

Manresa maintains that the construction of buildings affects the public interest. Hence, it is his opinion that an architect is not relieved from liability if the cause of the collapse is a defect in the ground, even if he proves that he gave due notice of the defect to the owner, for it is his duty in such case not to follow the latter's instructions but to refuse to undertake the construction in the public interest. Manresa, *Comentarios al Código Civil Español*, Vol. X, Part II, pp. 921–22; Puig Peña, *Derecho Civil*, Vol. IV, Part II, p. 307. In this connection, see Guaroa Velázquez, *Responsabilidad por los Defectos en las Edificaciones*, 20 *Rev. Jur. de la U.P.R.* 13. The French writers share the same view in their commentaries on a similar provision of the Civil Code of their country. Laurent points out that the architect's liability arises from a defect which not only interests the owner but also affects the existence of the building and, hence, the security of the people. "In this connection," he says, "the architect's responsibility is of a general interest. It follows that the contracting parties cannot override the architect's responsibility: first, no one may stipulate that he shall not answer for his negligence, since such a stipulation is contrary to good usage, and the contracting parties cannot, in their private stipulations, ignore laws which are of public interest.... This same rule applies to defects in construction." Laurent, *Derecho Civil Francés*, Vol. XXVI, pp. 64-65. Colin and Capitant believe that there is a reason of public order to require the architects and contractors to exercise *peritia artis*, and such reason is that, if the construction is poor or defective, their clumsiness is as fatal to the security of their clients as to the public. Colin and Capitant, *Derecho Civil*, Vol. IV, p. 343. Planiol and Ripert are also of the view that the warranty period which the law imposes on the architect or contractor is a measure of public interest and that the nonguarantee rule is void.[3]

---

[3] Planiol and Ripert, *Derecho Civil Francés*, Vol. II, pp. 194 and 207.

It follows from the foregoing that, in a building contract, the waiver of the ten-year period fixed by § 1483 of the Civil Code is void and does not release the contractor from liability. Nor may this period be validly altered by the parties. To allow a warranty period *is typically a legal obligation* on the part of the contractor, according to Scaevola, and which, we have seen, cannot be waived for reasons of public order. Regarding buildings, the section under consideration contains a special and concrete exception to the general rule that the lessor's responsibility is extinguished upon delivery of the thing. "The reason for the precept is clear. The delivery and inspection of the thing are not sufficient to assume that the lessee has occasion to discover any defect the thing may have. On the contrary, it is most probable that those defects are not noticeable and that only with the passing of time will they become noticeable. Drawing out this consideration from the very nature of the things, the proper and wise thing to do is to fix a period of time during which the lessor might be held responsible, and not to assume that the fact of acceptance implies that the lessee has waived any right of action which at the time he does not know whether or not he might have occasion to assert." (10 Manresa, *op. cit.*, pp. 919-20.)

"The Code", says Scaevola, "establishes a very interesting distinction as to the hidden defects in things executed under a construction contract. In the case of buildings, the construction of which as a whole is complicated and difficult to appreciate, it fixes a warranty period of ten years, which is enough in the opinion of experts for those defects to be exposed and for the extent of the damage to be measured as to the whole or part of the construction. If no construction is involved, that is, where the contract deals with personal property, the civil law does not provide a warranty period." 24 Scaevola, *op. cit.*, p. 90.

This commentator points out that the warranty period "means the *test against lapse of time*, because it is presumed, for technical reasons, that all the hidden defects which might

affect the subsistence of the construction will have been exposed within ten years." Scaevola, *op. cit.*, p. 103. See, also, 4 Falcón, *Código Civil*, 280; 9 Martínez Ruiz, *Código Civil*, 633.

The reasons adduced by the French commentators as underlying the precept are practically the same as those stated by the Spanish commentators.[4]

 Section 1483 speaks, however, of *defects in the construction* without distinguishing between hidden defects and those which are readily noticeable at first sight or upon routine inspection. Should a distinction be made for the purpose of determining which are the defects covered by the legal warranty period? We believe so. The very reason of the precept warrants such distinction. The opinions of the Spanish commentators on this point are sparse. A great number of them are silent or do not discuss the problem at all.[5] Those who discuss it are in favor of the distinction. In his commentaries on the equivalent section of the Spanish Civil Code, says Valverde:

"These sections define the contractual liability, and it is well to state that if, as a general rule, the lessor's liability ceases upon delivery of the construction without making claim, we believe, as do the commentators, that if the defects are not noticeable at first sight nor upon routine inspection, it should not be presumed that the lessee should waive his right of action (which it is claimed by some to be personal), and the liability

---

[4] Colin and Capitant, *op cit.*, pp. 340–41; Planiol and Ripert, *op cit.*, pp. 192–93; Laurent, *op. cit.*, pp. 68–69. "The State Council regarded § 1792 as an exception restricted to buildings, and this is justified by Berenguer in the following terms: 'It may be readily appreciated whether a piece of furniture has been well constructed, even from mere inspection; thus, the constructor is released from all liability as of its delivery and acceptance. This, however, is not true as respects a building, because it may have all the earmarks of a solid construction and yet have hidden defects which may cause its collapse within a certain period. The architect should therefore be held liable during a certain period reasonably sufficient to warrant the stability of the construction.'" 24 Scaevola, *op. cit.*, p. 95.

[5] Among these are Sánchez Román, Castán, De Diego, Puig Peña, Falcón, Martínez Ruiz, and De Buen.

shall subsist as long as the defects subsist." (Valverde, *Tratado de Derecho Civil Español*, Vol. III, p. 598.)

We know already Scaevola's opinion from the commentaries cited here. Manresa seemingly shares the same opinion, as inferred from his commentaries on §§ 1589, 1590, and 1591 of the Spanish Civil Code.[6] See, also, Nart, *"Contrato de Obra y Empresa"*, *Revista de Derecho Privado* (1951), p. 814 *et seq.*

The French commentators and the decisions of their country maintain that, for an architect or contractor to be liable during the warranty period fixed by law, it is essential that there be hidden defects. In the opinion of some of them, the existence of apparent defects which the owner could not overlook at the time of receiving the construction does not imply any liability on the part of the architect or contractor. "The presumption is that a construction which is accepted without objection had no apparent defects."[7] If the defects are apparent so that they were noticeable by the person who examines and receives the construction, the case is not governed by the section which fixes a warranty period but by the common rule, whereby the reception of the construction releases the workman from all liability.[8]

---

[6] This commentator states:

"Seemingly, the inference to be drawn from an analysis of §§ 1589 and 1590 is that the lessor's responsibility ceases as soon as the work is delivered, with the exception of the special case provided in § 1591.

"This is, in fact, the general rule since, as stated by Laurent, if the lessee after an inspection accepts the construction without making any claim to the lessor, it would seem that this fact implies a waiver of any future claim.

"But it is probable, as pointed out by this writer, that the defects in the thing are not noticeable at first sight nor upon routine inspection in this type of constructions, in which case it is fair and moral that the lessor should be liable for such defects which are later discovered. It should not be deemed that the lessee waives his right of action accruing from a fact of whose existence he was unaware." 10 Manresa, *op. cit.*, pp. 918–19.

[7] 11 Planiol-Ripert, *op. cit.*, p. 200.

[8] XXVI Laurent, *op. cit.*, p. 69.

492

The question under consideration is of importance in the decision of this case for, it will be recalled, when plaintiff received the building he was aware of the defects in the construction which gave rise to the claim for damages. If the reception had been made to complete satisfaction or without reservation, the contractor, according to the doctrine stated above, would have been released from liability as to the evident defects which were known to the owner, for such acceptance implied a waiver of any claim for such defects. Such is not the case as respects the hidden defects. We have seen, however, that plaintiff objected to the ostensible defects of which he was aware and accepted the building with that reservation. In view of this circumstance, which period governs a claim for damages resulting from the defects of the construction which were perceptible and known to him? In our opinion, the 30-day period agreed on by the parties. A stipulation fixing a 30-day period to make claim for apparent defects is not contrary to law nor to public order. By its nature, that stipulation governs the private rights and interests of the owner and of the contractor. Consequently, the validity of the stipulation with respect to apparent defects should be upheld. As to the hidden defects, the stipulation is void.[9]

The lower court erred in not holding that plaintiff's claim under the first contract for the defects of the construction which were known to him at the time of receiving the building had prescribed.

---

[9] By the contractual warranty given, the contractor bound himself to answer for any defects arising from the materials or labor supplied by him, free of cost to the owner, for a period of 30 days after delivery of the building. His warranty therefore expired at the end of 30 days after delivery of the building. Consequently, the warranty period having expired, the owner could not bring action claiming damages for apparent defects. As to the hidden defects, the contractual warranty stipulation is void and plaintiff may claim damages within the legal ten-year period in the event of collapse of the building as a result of hidden defects in the construction.

■ The third assignment charges that the trial court erred in awarding to plaintiff compensation for the loss of the use of the premises located on the main floor.

This error is based on a wrong premise. The first buildding was delivered to plaintiff on May 15, 1951, or 93 days in excess of the term fixed in the contract. The lower court awarded to plaintiff the sum of $883.50 as compensation for the rent which he failed to receive for those 93 days.[10] The court allowed no compensation to plaintiff for the time the defendant occupied the business premises on the main floor for storing building materials after May 15, 1951, in the belief that the defendant was occupying the premises with plaintiff's consent. The error was not committed.

We now turn to consider the appeal taken by plaintiff.

■ It is charged that the trial court erred (1) in not allowing compensation in the sum of $18,000 because the building is out of line; (2) in not allowing the sum of $1,000 in each of the causes of action for correcting and enlarging the eaves to the width specified in the contract; (3) in not allowing the items claimed for defects in the drainage of the roof slab and porch floors. Having decided that the claim for these items had prescribed, the discussion of these errors is academic.

■ The fourth error is directed to the sufficiency of the award for attorney's fees. These were fixed at $400. We have not been convinced that the lower court abused its discretion in fixing this amount, nor that it is insufficient, and we will not disturb the same on appeal. See Torres v. Biaggi, 72 P.R.R. 813, 820; Collazo v. Conesa, 70 P.R.R. 144, 152;

---

[10] The lower court made the following finding of fact:

"The evidence shows that the first building was delivered 243 days after signing the contract, or 93 days in excess of the 150-day period specified in the contract. Since according to the evidence the rent from the building has always been $285 a month, by reason of the 93-day delay plaintiff failed to receive the sum of $883.50 rent as well as the sum of $484.50 from the second part of the building, at the rate of $285 a month, by reason of the delay of 51 days in excess of 150 days specified in the contract to complete the construction." (Tr. Rec. 48, 49.)

494

*cf. Soto* v. *Lugo,* 76 P.R.R. 416. The error was not therefore committed.

The judgment will be modified so as to eliminate the items of $4,000 allowed for the building being out of line, of $100 for the substitution of the electric wires, and $200 for the defects in the stairway and the drainage, and as thus modified, it will be affirmed.