OPINION OF THE COURT
Millard L. Midonick, S.
A nonjury trial was held in this SCPA 2103 discovery *86 proceeding, petitioner praying that respondent be directed to turn over to the estate the proceeds of two savings bank accounts aggregating $19,012.32 received by respondent. The first issue for determination is whether the proceeds of the bank accounts constituted an outright gift by the decedent to respondent.
[Detailed statement of facts and findings with respect to elements of a gift have been omitted for purposes of official publication.]
Decedent’s liquid net worth consisted almost entirely of the said $19,012.32 in the two savings accounts. This court cannot find that she intended to strip herself of the great bulk of her assets, without recourse. The medical record does not indicate that she expected to die as a result of her then present illness, although the contemplation of her possible early death or disability seems plain. The respondent nephew would have the court believe that the decedent intended to make herself virtually a pauper. He testified that he deposited the checks endorsed over, to him in his own account for his own use, claiming that this is his rightful money by unrestricted gift from decedent.
What then is this court to infer from this evidence? Having obtained virtually the entire savings of his 76-year-old aunt, and having heard from that aunt upon tendering her fortune to him that her husband "would be taken care of’, respondent must have received these funds in a manner other than as an absolute gift. The intent to make the gift, especially since decedent, for practical purposes, became a pauper thereby, is clearly lacking (Matter of O’Sullivan, 173 Misc 554).
Since the transfer of the funds was not an absolute gift, the property must have come into respondent’s possession subject to a legal impediment. In that regard, it should be noted that the elements of a constructive trust are: "(1) a confidential or fiduciary relation, (2) a promise, (3) a transfer in reliance thereon and (4) unjust enrichment” (Sharp v Kosmalski, 40 NY2d 119, 121; Tebin v Moldock, 19 AD2d 275, mod 14 NY2d 807).
 The facts surrounding the transactions between the donor and the donee determine their relationship (Sharp v Kosmalski, supra, pp 121-122). The respondent-attorney-nephew was clearly in a confidential and fiduciary position with decedent. Not only did he have confidential conversations with decedent but he was an attorney, her attorney in fact *87 and a blood relative. In addition, the facts demonstrate that the decedent entrusted respondent with the care of her husband. With regard to this latter point, it is clear that a promise in some form, certainly implied and probably also express, was made by respondent to the decedent. The exact terms of that promise are not established other than that respondent would provide for petitioner. An allegation that procuring admission of petitioner into the Isabella Home was the entire obligation of the respondent in consideration of the transfer of the $19,012.32 is incredible. Until this money would no longer be needed by the decedent (for her living expenses had she lived and for her funeral), and by her husband-widower, the transfer was " 'instinct with [a continuing] obligation,’ imperfectly expressed”, to use any or all of the funds to assist them. (Cf. Wood v Duff-Gordon, 222 NY 88, 91, quoting from McCall Co. v Wright, 133 App Div 62, 68.)
As Chief Judge Breitel observed while serving in the Appellate Division: "It suffices that one who entrusted property did so because of certain understandings, and the one to whom the assets are given acquiesced even in silence. [Citing cases.] Thus, in the Edson case it was said [154 NY 199, 218]: 'The express promise in words is not necessary — silent acquiescence and tacit consent have all the force and effect of a promise solemnly made in the presence of witnesses.’ (To like effect, see, Bogert, Trusts and Trustees [2d ed.], § 496; 89 C.J.S., Trusts, § 139, p. 1020).” Chief Judge Breitel went on to say: "The extent of arrangements is a matter of concern and difficult to determine from the record; but the law is not to be frustrated because the whole truth is not available from the trusted one if it be clear and convincing enough that discernible promises made in a confidential relationship, have been broken or repudiated, and the trusted one will be unjustly enriched by reason of the breaches.” (Tebin v Moldock, 19 AD2d 275, 284, 280, mod as to extent of remedy only and affd 14 NY2d 807, supra.)
As to the third element, there was clearly a transfer of funds. The court also finds that this transfer was made on the basis of the above promise. Finally, the evidence sustains the finding that respondent would be unjustly enriched if he were entitled to possess without financial obligation the proceeds of the two savings bank accounts intended for the benefit first of decedent and then of petitioner, and, if any balance should remain, for the respondent. Consequently all the elements for- *88 impressing a constructive trust are present and this court finds that the circumstances of the transfer and breach gave rise to a constructive trust. As noted by the above, an express trust was not specifically proved, and for that matter is not even alleged.
Once a determination has been made that a constructive trust shall be impressed, as the court has made in this instance, the disposition and/or return of the funds must be determined. The law is clear that in the words of Judge Cardozo: "A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee * * * A court of equity in decreeing a constructive trust is bound by no unyielding formula. The equity of the transaction must shape the measure of relief.” (Beatty v Guggenheim Exploration Co., 225 NY 380, 386, 389.) Although the intent of the decedent may have been to remove the funds from petitioner’s control as well as her own control, apparently in an effort to avoid attachment by the public authority for a welfare claim, placing the funds in a constructive trust will assist the creditor and avoid detriment to the widower who might otherwise be evicted from the highly desirable Isabella Home which he desperately needs at age 97.
In Tebin v Moldock (19 AD2d 275, mod 14 NY2d 807, supra), the Appellate Division found that the plaintiff son of the decedent was entitled to all of the funds of the decedent in the hands of the defendant and that the plaintiff son was therefore the beneficiary of a constructive trust. The Court of Appeals modified the determination of the Appellate Division to the extent of limiting the scope of the constructive trust imposed on the defendant to an obligation to pay $25 a month for the benefit of the plaintiff son. That determination was based upon the reasoning that "[n]o such breach of confidence or of fiduciary obligation, either before or after decedent’s death, has been established as would warrant forfeiture by defendant of the major interest in decedent’s property which it was clearly decedent’s intent that defendant should have.” (14 NY2d 807, 809, supra.) The Court of Appeals remitted the matter to the Supreme Court for "appropriate directions in the implementation of such obligation” (p 808). The judgment on remittitur (dated February 15, 1965 signed by Justice *89 McCaffrey) provided that the sum of $7,500 should be deposited in a bank account in the name of defendant "as trustee” and that $25 per month should be payable out of the interest thereon to the plaintiff son for his life, and on his death, the defendant would be entitled to the entire balance of said bank account.
Similarly, a trust must be established herein. There is no evidence of any intent on the part of the decedent to limit the benefits to be paid for herself and her husband widower to $25 per month or to any other ceiling as there was in the Tebin case. Consequently, there is no reason to limit the invasion of the corpus and the income of the trust, as was done in the Tebin case. All of the funds must be turned over to a suitable trustee subject to proper claims, past and future, by the decedent’s funeral home, and, if provable, by the Isabella Home and by the public authorities. Any income and/or principal, over and above such claims, shall be payable to the petitioner in such amounts and at such times as the trustee shall determine. The remainder, if any, after death of the petitioner beneficiary, can be turned over to the respondent, as the decedent is found to have intended. It is the object and hope of this court that the petitioner will be able to receive and have the use of a maximum of $100 per month for amenities and luxuries, if needed by him, over and above the support presently provided him at the home. Since this money originates with the decedent, not the petitioner, the authorities are requested, but not directed, to exercise their discretion to provide these comforts to this elderly man by leaving sufficient assets in trust for his benefit. Unlike the facts in Tebin, there is sufficient evidence of breach of confidential relationship by the respondent to warrant the appointment of a disinterested third party, rather than respondent, as the trustee. Such disinterested party shall be any one of the attorneys for petitioner whom petitioner shall nominate, or if he fails to do so, or if none will serve, the Public Administrator of New York County.
To establish a trust whereby the income only would be payable to the petitioner and the remainder would go to the respondent, would have an adverse effect on governmental authorities which provide the support of the petitioner at the present time, and which have done so for some years after decedent’s death. If the petitioner were the income beneficiary of a trust, the corpus of which he would be entitled to invade *90 for his well being, the public authorities providing such a person with support could deny assistance on the basis that the beneficiary has failed to exhaust his remedies of invasion of that trust pursuant to EPTL 7-1.6. (Matter of Steinberg v New York State Dept. of Social Servs., 90 Misc 2d 547.) Moreover to create a spendthrift trust would be to deny government authorities access to these funds to which they may be entitled and may claim. The decedent would have been required, if she had lived, to have supported the petitioner from these funds during her life (Matter of Colon, 83 Misc 2d 344). She could not herself have disposed of the funds for her benefit or in contemplation of death, in order to deprive the public treasury of these funds (Social Services Law, §§ 101, 104). By specifying how the funds are to be used by the trustee, this court assures that the public treasury will benefit to the extent equitable and restitutional. The effect of restoring these funds to the estate, which is the only relief sought by petitioner, might have a detrimental effect on the public authorities or on the petitioner himself. The law is clear that a welfare recipient, who is a legatee under a will, or intestate distributee, can renounce his legacy if no trust is imposed. (Matter of Stockton v Lavine, 76 Misc 2d 386; Matter of Hamilton, NYLJ, Dec. 15, 1972, p 15, col 1.) If the funds are returned to the estate, petitioner may then attempt to renounce which would deprive the public authorities of their claim to the funds. A renunciation may have a detrimental effect on his residency in the Isabella Home. In Matter of Stockton (supra), the public assistance was merely medical, not as here where the care is that of a first-rate home for the aged from which petitioner may be transferred to an ordinary nursing home at substantially less cost to the public treasury.
In summary, the court finds that a constructive trust shall be impressed as outlined above. The respondent is therefore required to turn over to whichever of petitioner’s attorneys whom he wishes to nominate as trustee, or if he fails to do so, or if none will serve, to the Public Administrator of the County of New York, the proceeds of the transferred savings bank accounts less the funeral expenses of $275 heretofore expended by respondent (the trustee is directed to pay and satisfy the funeral home judgment first, thereby relieving respondent as obligor thereof), less an amount of $500 for amenities and cash supplied by respondent to petitioner as referred to above, together with interest on the balance *91 ($19,012.32 less $775) at the rate of 6% per annum from April 1, 1974.
The trustee is directed to institute the appropriate proceeding for the determination of all possible claims against the trust, including, but not limited to, the counsel fees of the attorneys for the petitioner executor. Notice of such proceeding shall be given to the petitioner, the respondent, the Isabella Home and the Attorney-General of the State of New York. One advantage of such procedure will be to avoid a multiplicity of proceedings in various courts. Time is surely of the essence here. In the case of a 97-year-old beneficiary subsisting on public assistance, justice delayed is justice denied.